<u>NOT FOR PUBLICATION</u>                                        (Doc. No. 11)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

———————————————————— :
                                                                          :
HORIZON BLUE CROSS BLUE                      :
SHIELD OF NEW JERSEY,                            :
                                                                          :
                          Plaintiff,                       :          Civil No. 10-3197 (RBK/KMW)
                                                                          :
                 v.                                             :          **OPINION**
                                                                          :
TRANSITIONS RECOVERY PROGRAM, :
JOHN DOES 1-10, and ABC                            :
CORPORATIONS 1-10,                                   :
                                                                          :
                          Defendants.                    :
———————————————————— :

**KUGLER**, United States District Judge:

This matter arises out of allegedly false misrepresentations made by a healthcare provider in relation to medical services it provided to the beneficiary of an employee benefit plan. Presently before the Court is the motion to dismiss the Complaint filed by Defendant Transitions Recovery Program ("Transitions") pursuant to Federal Rule of Civil Procedure 12(b)(6). Transitions argues that dismissal is appropriate because the Employee Retirement Income Security Act of 1974 ("ERISA") preempts all of Plaintiff's state law claims. For the following reasons, Defendant's motion is **DENIED**.

**I.      BACKGROUND**

Horizon Blue Cross Blue Shield of New Jersey ("Horizon") is a not-for-profit health service corporation organized under the New Jersey Health Service Corporations Act, N.J. Stat. Ann. 17:48E-1 <u>et</u> <u>seq.</u> Transitions is a drug and alcohol treatment center located in Miami, Florida. Horizon provides health coverage and benefits for its subscribers in the State of New

Jersey.  Under the terms of its health benefit plans, Horizon authorizes payments of subscribers' claims subject to the conditions, limitations, and exclusions contained in its health benefits plans.

Between 2002 and 2008, Transitions provided treatment to subscribers of Horizon's health benefit plans and submitted numerous claims for payment pursuant to those plans.  To submit insurance claims, Transitions used International Classification of Disease ("ICD") codes.  ICD codes enabled Transitions to communicate the treatment that each Horizon subscriber received and the diagnoses made by Transitions's health care professionals.  Between 2002 and 2008, Horizon's health benefit plans provided significantly broader coverage for the treatment of alcohol dependency than for the treatment of other substance abuse dependencies and behavioral disorders.

The Complaint alleges that between January 2002 and March 2008, Transitions submitted a total of 8,652 claims to Horizon containing diagnoses of alcohol dependency.  As a result of those claims, Horizon paid Transitions $23,683,481.55.  In 2008, Horizon conducted an audit of Transitions's medical records.  Based on the results of that audit, Horizon concluded that Transitions misrepresented the diagnoses and condition of its patients in ninety-four percent of the claims it submitted for reimbursement.  Specifically, Horizon claims that Transitions mischaracterized non-alcohol disorders as alcohol-related disorders.  In addition, Horizon alleges that Transitions knew that the health benefit plans contained specific limitations for the treatment of substance abuse and other behavioral disorders, and that those limitations did not apply to the treatment of alcohol dependency.  The Complaint further alleges that as a result of Transitions's allegedly fraudulent claims, Horizon paid more than $8 million for claims that were not covered by Horizon's health benefit plans or insurance policies.

On May 24, 2010, Horizon filed the Complaint in the Superior Court of New Jersey.

(Doc. No. 1 Ex. A).  The Complaint alleges fraud under the New Jersey Insurance Fraud

Prevention Act ("NJIFPA"), N.J. Stat. Ann. 17:33A-1 to -30, common law fraud, and negligent

misrepresentation.  (Id.).  On June 23, 2010, Transitions removed the matter to this Court.  (Doc.

No. 1).  On September 15, 2010, Transitions moved to dismiss under Rule 12(b)(6).  The parties

submitted their respective briefs and the motion is ripe for review.

## II.    STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure

to state a claim upon which relief may be granted.  With a motion to dismiss, "courts accept all

factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled

to relief."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotations

omitted).  In other words, a complaint survives a motion to dismiss if it contains sufficient

factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In making that determination, a court must conduct a two-part analysis.  Ashcroft v.

Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Fowler, 578 F.3d at 210-11.  First, the Court must

separate factual allegations from legal conclusions.  Iqbal, 129 S. Ct. at 1949.  "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice."  Id.  Second, the court must determine whether the factual allegations are sufficient to

show that the plaintiff has a "plausible claim for relief."  Id. at 1950.  Determining plausibility is

a "context-specific task" that requires the court to "draw on its judicial experience and common

sense."  Id.  A complaint cannot survive where a court can only infer that a claim is merely

possible rather than plausible.  See id.

### III.   DISCUSSION[1]

#### A.  Complete Preemption

Defendant contends that Plaintiff's state law claims are completely preempted by §
502(a), ERISA's civil enforcement provision, and expressly preempted by § 514(a), ERISA's
express preemption provision.

ERISA governs the rights and obligations of participants and beneficiaries of employee
benefit plans.  "Congress enacted ERISA [1] 'to protect . . . the interests of participant benefit
plans and their beneficiaries' by setting out substantive regulatory requirements for employee
benefit plans and [2] to 'provid[e] for appropriate remedies, sanctions, and ready access to the
Federal Courts.'"  Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004) (quoting 29 U.S.C. §
1001(b)).  "To this end, ERISA includes expansive pre-emption provisions, . . . which are
intended to ensure that employee benefit plan regulation would be 'exclusively a federal
concern.'"  Id. (quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523 (1981)).[2]

ERISA creates two forms of federal preemption in lawsuits involving employee benefits
plans.  First, § 502(a), ERISA's civil enforcement provision, completely preempts all state law
claims based upon conduct that gives rise to a claim under ERISA and "converts [them] . . . into .

---

[1] There is no dispute that some of the plans at issue in this dispute are "employee welfare benefit plans" as defined
by ERISA.  29 U.S.C. § 1002(1).

[2] In Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987), the Supreme Court explained:

> The detailed provisions of § 502(a) set forth a comprehensive civil enforcement
> scheme that represents a careful balancing of the need for prompt and fair claims
> settlement procedures against the public interest in encouraging the formation of
> employee benefit plans.  The policy choices reflected in the inclusion of certain
> remedies and the exclusion of others under the federal scheme would be
> completely undermined if ERISA-plan participants and beneficiaries were free
> to obtain remedies under state law that Congress rejected in ERISA.  'The six
> carefully integrated civil enforcement provisions found in § 502(a) of the statute
> as finally enacted . . . provide strong evidence that Congress did not intend to
> authorize remedies that it simply forgot to incorporate expressly."  (quoting
> Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 146 (1985))
> (emphasis in original).

. . federal claim[s] for purposes of the well-pleaded complaint rule."  Davila, 542 U.S. at 209

(quoting Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 65-66 (1987)).  Complete preemption

under § 502(a) "is jurisdictional[,] and confers federal question jurisdiction over an action."

Massachusetts Mut. Life Ins. Co. v. Marinari, No. 07-2473, 2009 WL 5171862, at *3 n.4 (D.N.J.

Dec. 29, 2009).  As a result, "[c]omplete preemption creates removal jurisdiction even though no

federal question appears on the face of the plaintiff's complaint."  Lazorko v. Pa. Hosp., 237

F.3d 242, 248 (3d Cir. 2000).  By contrast, substantive, or "express," preemption "displaces state

law but does not . . . confer federal question jurisdiction."  Id.  In other words, express

preemption "governs the law that will apply to state law claims, regardless of whether the case is

brought in state or federal court."  Id.

        In Pascack Valley Hosp., Inc. v. Local 464A UFW Welfare Reimbursement Plan, 388

F.3d 393 (3d Cir. 2004), the Third Circuit articulated a two-part test to determine whether state

laws are completely preempted by Section 502(a).  Under that test, a state law is preempted by

ERISA when:  (1) the plaintiff could have originally brought the claim under Section 502 and (2)

"no other legal duty supports the [] claim."  Id. at 400.

        With respect to complete preemption, Defendant argues that "the very purpose of the

underlying claim by Horizon – to recoup previously paid benefits that it claims arguably should

not have been paid – falls squarely within the purview of Section 502(a)(3) of ERISA."  (Def.'s

Br. in Supp. of Mot. to Dismiss at 14).  Defendant points to Sereboff v. Mid Atl. Med. Servs.,

547 U.S. 356, 361 (2006), for the proposition that "seeking recoupment of benefits is 'a proper

use' of ERISA because it is based on an effort 'to enforce' plan terms."  Id.

        The Court finds that ERISA does not completely preempt Plaintiff's state law claims

because Plaintiff cannot obtain the relief it seeks by bringing a claim under § 502(a).  Section

502(a)(3) allows a "participant, beneficiary, or fiduciary" to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  29 U.S.C. § 1132(a)(3), § 502(a)(3). Here, Plaintiff is not a participant or beneficiary of an ERISA-benefit plan.  Thus, the Court must determine whether Plaintiff is a fiduciary of an ERISA-benefit plan.

ERISA defines a fiduciary as an entity that:

> [] exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) [] renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) [] has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A) (emphasis added).

The Third Circuit has acknowledged that "[u]nder ERISA, an entity is considered a fiduciary to the extent that, inter alia, it holds any discretionary authority or discretionary responsibility in the administration of an employee benefit plan."  Wachtel v. Health Net, Inc., 482 F.3d 225, 229-30 (3d Cir. 2007) (citing 29 U.S.C. 1002(21)(A)(iii)).  Moreover, in Davila, the U.S. Supreme Court recognized that an insurance company with discretionary authority over the administration of an employee benefit plan is a fiduciary under ERISA, and noted that "[c]lassifying an entity with discretionary authority over benefits determinations as anything but a plan fiduciary would . . . conflict with ERISA's statutory and regulatory scheme."  542 U.S. at 220.

The allegations in the Complaint demonstrate that Horizon provides health coverage and benefits for its subscribers, determines which services are covered by its benefit plans, and audits

health care providers to determine whether their services are covered by its benefit plans. Therefore, Horizon is an entity that "has . . . discretionary authority or discretionary responsibility in the administration of [an ERISA] plan."  29 U.S.C. § 1002(21)(A); see Blue Cross & Blue Shield of Rhode Island v. Korsen, 746 F. Supp. 2d 375, 381 (D.R.I. 2010) (finding that health insurance company was a fiduciary under 29 U.S.C. § 1002(21)(A) because it "defin[ed] permissible, compensable medical services; [] determin[ed] which services [were] medically necessary for its subscribers; and audit[ed] medical providers to determine if their services [were] medically necessary for its subscribers . . . .").

Although Plaintiff is a fiduciary under § 502(a), however, ERISA does not completely preempt Plaintiff's state law claims because Plaintiff cannot bring a fraud claim for money damages under § 502(a)(3).[3]  In Mertens v. Hewit Assocs., 508 U.S. 248 (1993), the Supreme Court held that § 502(a)(3) only provides for "those categories of relief that were typically available in equity."  Id. at 256.  In Great-West Life & Annuity Ins. v. Knudson, 534 U.S. 204 (2002), the Court explained that the remedies available under § 502(a)(3) do not include monetary damages, stating:

> Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for "money damages," as that phrase has traditionally be applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty.

Id. at 209 (quoting Bowen v. Massachusetts, 487 U.S. 879, 918-19 (1988)).  The Court also noted that restitution is a form of equitable relief, but explained that "one feature of restitution was that it sought to impose a constructive trust or equitable lien on 'particular funds or property in the defendant's possession.'"  Id. at 213.  The Court concluded that "for restitution to lie in

---

[3] A fiduciary can bring a claim to enforce the provisions of an ERISA plan under § 502(a)(3).

equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession."  Id.

Here, because Plaintiff seeks both compensatory and punitive damages for the alleged falsification of insurance claims, it cannot bring a civil action under § 502(a)(3).  Plaintiff does not request equitable relief in the form of a constructive trust or equitable lien on particular funds or items in Defendant's possession.  Thus, because the relief Plaintiff seeks is legal and not equitable, Plaintiff cannot bring a claim under § 502(a)(3).

Defendant's reliance on Sereboff is misplaced.  In Sereboff, the plaintiff, an insurance plan administrator, brought a lawsuit against two beneficiaries under § 502(a)(3).  360 U.S. at 360.  After the beneficiaries suffered physical injuries in a car accident, the plaintiff paid the cost of their medical treatment.  Id.  Thereafter, the beneficiaries filed a tort action in state court against third parties seeking compensatory damages for injuries they sustained as a result of the accident.  Id.  After the beneficiaries filed the tort suit, the plaintiff sent them a letter seeking to impose a lien on the proceeds from the lawsuit.  Id.  The beneficiaries settled the lawsuit for $750,000.00, but did not send any of the settlement proceeds to the plaintiff.  Id.  As a result, the plaintiff filed a motion for a temporary restraining order and preliminary injunction requiring the beneficiaries to set aside $74,869.37 from the proceeds.  Id.  The district court found in favor of the plaintiffs and ordered the beneficiaries to pay $74,869.37, plus interest and costs.  Id. at 361.  The Fourth Circuit Court of Appeals affirmed.  Id.  The Supreme Court upheld the Fourth Circuit's decision, noting that the plaintiffs "did not seek 'to impose personal liability . . . for a contractual obligation to pay money,'" id. at 363 (quoting Knudson, 534 U.S. at 210), but instead "sought 'specifically identifiable' funds that were 'within the possession and control of the

[plaintiffs],'" id. at 362-63 (quoting Mid Atl. Med. Servs., LLC v. Sereboff, 407 F.3d 212, 218 (4th Cir. 2005)).

Thus, Sereboff stands for the proposition that a fiduciary cannot recover legal remedies, such as compensatory or punitive damages, under ERISA's civil enforcement provision, § 502(a)(3).  Instead, a plaintiff who brings an action under § 502(a)(3) may receive equitable relief, such as restitution in the form of a constructive trust or lien on money or assets fraudulently held by the defendant.  Plaintiff's reliance on Sereboff is misplaced because unlike the plaintiff in Sereboff, who petitioned the district court for a temporary restraining order and preliminary injunction, here, Plaintiffs seek compensatory and punitive damages.  Therefore, because a plaintiff may not recover monetary damages under § 502(a)(3), and Plaintiff seeks compensatory and punitive damages, ERISA does not completely preempt Plaintiff's claim as a matter of law.[4]

---

[4] The Court notes that a plaintiff must seek an equitable remedy in order to bring a claim under § 502(a)(3).  In Korsen, the district court noted that "even if it is assumed that the [plaintiff] seeks damages, which may be unavailable under Kudson and Sereboff, the remedy that [the plaintiff] seeks is not determinative or even relevant to the determination of federal subject matter jurisdiction; all that matters is that the claim be within the scope of § 502(a)." 746 F. Supp. 2d at 385 (internal quotation marks omitted).  To reach that conclusion, the Court relied upon a footnote in Danca v. Private Health Care Sys., Inc., 185 F.3d 1 (1st Cir. 1999), which cited Pilot Life for the proposition that the remedy a plaintiff seeks is irrelevant to the determination of whether ERISA completely preempts a plaintiff's state law cause of action. Id. at 5 n.4.

However, contrary to the court's position in Korsen, the Supreme Court made clear that § 502(a)(3) precludes Plaintiff from bringing an action for compensatory or punitive damages.  In the majority opinion, Justice Scalia explained:

> [In § 502(a)(1)(B)], Congress authorized "a participant or beneficiary" to bring a civil action "to enforce his rights under the terms of the plan," without reference to whether the relief sought is legal or equitable.  29 U.S.C. § 1132(a)(1)(B) (1994 ed.).  But Congress did not extend the same authorization to fiduciaries.  Rather, § 502(a)(3), by its terms, only allows for equitable relief.  We will not attempt to adjust the "carefully crafted and detailed enforcement scheme" embodied in the text that Congress has adopted.  Because petitioners are seeking legal relief – the imposition of personal liability on respondents for a contractual obligation to pay money – § 502(a)(3) does not authorize this action.

Knudson, 534 U.S. at 221.  Therefore, as the Supreme Court made clear in Knudson, Plaintiff cannot bring an action for compensatory or punitive damages under § 502(a)(3).  Accordingly, ERISA does not completely preempt Plaintiff's state law claims.

### B.  Express Preemption

#### 1.  Plaintiff's NJIFPA Claim

Defendant argues that Plaintiff's NJIFPA claim is expressly preempted by ERISA. Defendant asserts that Plaintiff's state law claims are preempted because in order to succeed on its state law claims, Plaintiff must prove the existence of an ERISA plan, and demonstrate that Defendant misled Plaintiff in order to circumvent the limitations in the plan.  (Def.'s Reply Br. at 9-10).

Section 514(a) of ERISA provides:  "Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to an employee benefit plan . . . ."  29 U.S.C. § 1144(a), § 514(a) (emphasis added).  As a result, if a state law claim relates to an ERISA plan, "it is preempted even if it states an otherwise valid state law claim."  1975 Salaried Ret. Plan for Eligible Empls. of Crucible, Inc. v. Nobers, 968 F.2d 401, 406 (3d Cir. 1992).  The Supreme Court has construed the terms "relate to" broadly, noting that "a state law 'relate[s] to' a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan."  Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47 (1987).  Thus, "a state law may relate to a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plan[], or the effect is only indirect."  Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139 (1990) (internal quotations omitted).

The Third Circuit developed a two-step inquiry for determining whether a state law relates to an insurance plan.  First, the district court must determined whether the state law:  (1) is specifically designed to affect employee benefit plans; (2) singles out such plans for special treatment; or (3) creates rights or restrictions that are predicated on the existence of such a plan.

United Wire, Metal & Mach. Health & Welfare Fund. v. Morristown Mem. Hosp., 995 F.2d

1179, 1192 (3d Cir. 1993)).  A state law claim is predicated on the existence of an employee

benefit plan if "the existence of an ERISA plan [is] a critical factor in establishing liability" and

the "trial court's inquiry would be directed to the plan."  Nobers, 968 F.2d at 406.  Second, a

state law "may be preempted . . . if its effect is to dictate or restrict the choices of ERISA plans

with regard to their benefits, structure, reporting and administration, or if allowing states to have

such rules would impair the ability of a plan to function simultaneously in a number of states."

Id. at 1193.

As in any preemption analysis, when applying those steps, the district court must be

mindful that "the purpose of Congress is the ultimate touchstone."  Metropolitan Life Ins. Co.,

471 U.S. at 745.  Thus, courts should "look[] to the objectives of the ERISA statute as a guide to

the scope of the state law that Congress understood would survive."  DeBuono v. NYSA-ILA

Med. and Clinical Servs. Fund, 520 U.S. 806, 813-14 (1997).

The New Jersey Legislature enacted the NJIFPA

> to confront aggressively the problem of insurance fraud in New
> Jersey by facilitating the detection of insurance fraud, eliminating
> the occurrence of such fraud through the development of fraud
> prevention programs, requiring the restitution of fraudulently
> obtained insurance benefits, and reducing the amount of premium
> dollars used to pay fraudulent claims.

N.J. Stat. Ann. 17:33A-2.  To further those objectives, the NJIFPA prohibits certain conduct

related to insurance policies, and provides remedies for insurance companies harmed by

insurance fraud.  A person is liable for violating the NJIFPA if he:

> (1) Presents or causes to be presented any written or oral statement
> as part of, or in support of or opposition to, a claim for payment or
> other benefit pursuant to an insurance policy or the "Unsatisfied
> Claim and Judgment Fund Law," . . . knowing that the statement

contains any false or misleading information concerning any fact or thing material to the claim; or

(2) Prepares or makes any written or oral statement that is intended to be presented to any insurance company, the Unsatisfied Claim and Judgment Fund or any claimant thereof in connection with, or in support of or opposition to any claim for payment or other benefit pursuant to an insurance policy or the "Unsatisfied Claim and Judgment Fund Law," . . . knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim; or

(3) Conceals or knowingly fails to disclose the occurrence of an event which affects any person's initial or continued right or entitlement to (a) any insurance benefit or payment or (b) the amount of any benefit or payment to which the person is entitled.

N.J. Stat. Ann. 17:33A-4.

With respect to the first step in the preemption analysis, it is clear that the NJIFPA is not specifically designed to address ERISA benefit plans. The NJIFPA was designed "to confront aggressively the problem of insurance fraud in New Jersey." N.J. Stat. Ann. 17:33A-2. The Act accomplishes that goal by regulating all types of insurance contracts and creating penalties for fraudulent conduct related to insurance claims. Furthermore, the NJIFPA does not single out employee benefit plans for special treatment. The NJIFPA's proscriptions apply equally to all types of insurance policies, including employee benefit plans. Finally, the NJIFPA does not create rights and restrictions that are predicated upon the existence of an ERISA plan. Instead, the NJIFPA regulates the conduct of insureds seeking insurance benefits, and allows an insurance company to bring a cause of action against an insured who attempts to procure insurance benefits by fraudulent means. See Marinari, 2009 U.S. Dist. LEXIS 120716, at *26.

With respect to the second step of the preemption analysis, the NJIFPA does not dictate or restrict the choices available under ERISA plans with regard to benefits, structure or

administration, and, allowing plaintiffs to bring claims under the NJIFPA would not impair the ability of an ERISA plan to function simultaneously in a number of states.

Therefore, because the NJIFPA creates rights and obligations separate and distinct from ERISA, and the NJIFPA does not dictate or restrict the choices available under ERISA plans with regard to benefits or administration, the Court finds that ERISA does not preempt Plaintiff's NJIFPA claim.  See id. (finding that ERISA did not preempt plaintiff's NJIFPA claim because "the [NJIFPA] imposes duties that are separate and independent from the contractual duties set forth in the ERISA plan.").

### 2.  Plaintiff's Common Law Fraud and Negligent Misrepresentation Claims

Defendant argues that Plaintiff's state law claims are preempted by ERISA because in order to succeed on those claims Plaintiff "must prove that ERISA Plans with the specific benefit limitation referenced in the Complaint exist and that Transitions' conduct in allegedly miscoding certain patient's diagnoses was specifically aimed at circumventing this limitation."  (Def.'s Reply Br. at 9-10) (citing Compl. ¶¶ 17, 26-28, 41, 53, 60).[5]  Defendant also asserts that "Horizon's state law claims . . . are 'related to' ERISA Plans because their disposition will require an analysis of the terms and conditions of each Plan in issue to determine whether or not the coverage distinction Horizon references actually exists."  (Def.'s Br. in Supp. of Mot. to Dismiss at 12).

---

[5] Defendant also argues that Plaintiff's state law claims are preempted because they conflict with the remedies provided in § 502(a)(3).  Defendant contends that in enacting ERISA, Congress demonstrated the clear policy choice to exclude certain state law remedies for violations related to ERISA plans.  Specifically, Defendant states "[t]his clear policy choice to restrict remedies was highlighted in [Blue Cross & Blue Shield v. Korsen, 746 F. Supp. 2d 375 (D.R.I. 2010)], where the court readily conceded that by converting [the plaintiff's] claims into a federal claim under § 502(a)(3), it was 'limiting' [the plaintiff's] potential recovery."  (Def.'s Reply Br. at 10).  However, in Korsen, although the Court denied the plaintiff recovery with respect to the portion of the plaintiff's breach of contract claim that was preempted by ERISA, the court noted that the portion of the plaintiff's state-law breach of contract claim that "[was] not subject to ERISA's complete preemption" was unaffected by its decision.  Korsen, 746 F. Supp. 2d at 384.  Therefore, because Plaintiff's state law claims are not subject to ERISA's complete preemption provision, Defendant's argument that Plaintiff's state law claims are preempted because they conflict with the remedies provided in § 502 is unavailing.

In addition to statutory causes of action, "even a common law cause of action is preempted by ERISA if it conflicts directly with an ERISA cause of action."  See Ingersoll-Rand, 498 U.S. at 142.  Because common law fraud is an area of traditional state regulation, the party asserting preemption bears "the considerable burden of overcoming 'the starting presumption that Congress does not intend to supplant state law.'"  DeBuono, 520 U.S. 814.  However, "[t]he mere fact that States have traditionally regulated common law fraud does not, in and of itself, preclude [Plaintiff's] claim from being expressly preempted under § 1144(a) if allowing the claim to go forward would thwart the statutory objectives of ERISA."  Trustees of the AFTRA Health Fund v. Biondi, 303 F.3d 765, 775 (7th Cir. 2002) (quoting California Div. of Labor Standards Enforcement v. Dillingham Const., N.A., Inc., 519 U.S. 316, 330 (1997)).

In order to determine whether a state law relates to an ERISA plan, the Court must "go beyond the unhelpful text [of § 1144(a)] and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive."  N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 656 (1995) (emphasis added).  Moreover, the Court should use the objectives of ERISA to determine "the nature and effect of the state law on ERISA plans."  Biondi, 303 F.3d at 774 (quoting Dillingham, 519 U.S. at 325; see DeBuono, 520 U.S. at 813-14.

The primary objectives of ERISA are to "protect . . . the interest of participants . . . and their beneficiaries, by requiring the disclosure and reporting . . . of financial and other information . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and

ready access to Federal courts." 29 U.S.C. § 1001(b).  Moreover, Congress enacted § 1144(a) in order to

> ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government . . ., [and to prevent] the potential for conflict in substantive law . . . requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction.

Travelers, 514 U.S. at 656-57 (internal citation omitted).

As previously mentioned, the Third Circuit has held that a state law "relates to" an ERISA plan "if it is specifically designed to affect employee benefits plans, if it singles out such plans for special treatment, or if the rights or restrictions it creates are predicated on the existence of such a plan." United Wire, 995 F.2d at 1192.  Plaintiff's common law fraud and negligent misrepresentation claims are not "specifically designed to affect employee benefit plans," and do not "single out" employee benefit plans for special treatment.  Id.  Both common law fraud and negligent misrepresentation "are 'generally applicable' laws that 'make[] no reference to, [and] indeed function[] irrespective of, the existence of an ERISA plan.'"  Ragan v. Tri-Cnty. Excavating, Inc., 62 F.3d 501, 511 (3d Cir. 1995) (quoting Ingersoll-Rand, 498 U.S. at 139). Thus, the critical inquiry is whether Plaintiff's common law claims are "predicated on the existence of" an ERISA plan.  United Wire, 995 F.2d at 1192.

A common law claim is "predicated on the existence of" an ERISA plan, when (1) "in order to prevail [on the state law cause of action], a plaintiff [must] plead, and the court [must] find, that an ERISA plan exists."  Ragan, 62 F.3d at 511 (quoting Ingersoll-Rand, 498 U.S. at 140).  However, "[p]reemption does not occur . . . if the state law has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability."

District of Columbia v. Greater Washington Bd. of Trade, 506 U.S. 125, 130 n.1 (1992).  Thus, "a state-law claim is not expressly preempted under § 1144(a) merely because it requires a cursory examination of ERISA plan provisions."  Biondi, F.3d at 780 (citing Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1472 (4th Cir. 1996)).

When an ERISA plan is merely the context in which a traditional state law tort occurs, § 1144(a) does not preempt a state law cause of action.  In Geller v. Cnty. Line Auto Sales, Inc., 86 F.3d 18 (2d Cir. 1996), the trustees of a trust that provided medical benefits to members of an automobile dealers association brought a lawsuit against a member-employer for common law fraud.  The trustees alleged that they paid the member-employer $104,554.82 from the trust fund as a result of the member-employer's alleged misrepresentations, and sought reimbursement pursuant to ERISA's civil enforcement provision, 29 U.S.C. § 1132(a), and compensatory and punitive damages.  Id. at 19, 20.  The district court held that the trustees could not bring a claim under 29 U.S.C. § 1132(a), and found that 29 U.S.C. §1144(a) preempted all of the plaintiff's state law claims.  Id.  The Second Circuit upheld the district court's decision to deny the plaintiff relief under 29 U.S.C. § 1132(a), but reversed the court's determination that § 1144(a) preempted the plaintiff's state law claims.  The Court found that "although the defendants improperly administered the plan, the essence of the plaintiffs' fraud claim [did not] rely on the pension plan's operation or management."  Id. at 23.  Regarding the issue of whether ERISA expressly preempted the plaintiff's common law claims, the Court held that "[t]he unauthorized diminution of pension benefits-in the present case, the outright squandering of funds-is squarely at odds with the congressional purpose of protecting pension benefits," and explained that "allowing the plaintiffs to pursue their common law fraud claim would [not] compromise the purpose of Congress" or "impede federal control over regulation of employee benefits."  Id. at 23.

16

The Court finds that ERISA does not preempt Plaintiff's common law claims.  First, the Court finds that the court's analysis in <u>Geller</u> is persuasive on the issue of express preemption under ERISA.  Like the defendant in <u>Geller</u>, who misrepresented the employment status of one of its employees, Defendant allegedly misrepresented the diagnoses of plan subscribers in order to receive payment under the employee benefit plans.  Moreover, similar to the plaintiff in <u>Geller</u>, who sought to recover compensatory damages for money it paid to a member-employer due to allegedly fraudulent statements made by the member-employer, Plaintiff seeks compensatory and punitive damages from a health-care provider for payments it made as a result of allegedly fraudulent claims made by a health-care provider concerning the treatment it provided to subscribers of an employee benefit plan.  Finally, just as the "unauthorized diminution of pension benefits" caused by fraudulent conduct of a member-employer is at odds with the congressional purpose of protecting pension benefits, the diminution of pension benefits caused by fraudulent conduct of a health-care provider also conflicts with the purpose of ERISA.

Second, denying Plaintiff relief under both ERISA and state law conflicts with the purpose of ERISA.  Two of the principal objectives of ERISA are "[1] 'protect[ing] . . . the interests of participant benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and [2] . . . 'providing for appropriate remedies, sanctions, and ready access to the Federal Courts.'"  <u>Davila</u>, 542 U.S. at 208 (quoting 29 U.S.C. § 1001(b)).  As previously mentioned in this Opinion, Plaintiff cannot bring a claim for compensatory damages under ERISA's enforcement provision, § 502(a)(3).  Therefore, the only way that Plaintiff can recoup the money it lost due to Defendant's allegedly fraudulent behavior is to pursue a remedy under state law.[6]  A finding by this Court that ERISA preempts all of

---

[6] Although a plan administrator may seek restitution through a constructive trust or lien on the money paid to an allegedly fraudulent health care provider, <u>see</u> <u>Knudson</u>, 534 U.S. at 213, those forms of relief are unavailable to

Plaintiff's state law claims would effectively deny Plaintiff <u>any</u> form of relief for the $8 million

it paid to Defendant as a result of Defendant's allegedly fraudulent conduct.  Allowing a health

care provider to make fraudulent statements to a plan administrator in order to collect

unauthorized payments under an ERISA plan is clearly at odds with the Congressional purpose

of "protect[ing] . . . the interests of participant benefit plans."  <u>Davila</u>, 542 U.S. at 208; <u>cf.</u>

<u>Biondi</u>, 303 F.3d at 782 (finding that "a plan participant's decision to commit fraud in the

context of an employee benefit plan does not immunize him from tort liability under state

law.").[7]  Thus, the legislative purpose of ERISA supports a finding that ERISA does not preempt

Plaintiff's state law claims.

   Third, Plaintiff's state law claims do not implicate any of ERISA's fundamental

concerns.  This case does not involve a plan beneficiary suing a plan administrator for the

improper denial of benefits, or a plan administrator suing a plan beneficiary to recoup improperly

paid benefits based on allegedly false statements.  Nor does this case involve the operation or

management of an employee benefit plan.  Instead, Plaintiff's claim is a "plain vanilla" fraud

claim.  Reduced to its bare elements, the Complaint alleges that Defendant fraudulently

misrepresented that certain subscribers received treatment for alcohol dependency, and in

reliance on Defendant's misrepresentations, Plaintiff's paid more than $8 million.  The ERISA

plan is "only the context in which [a] garden variety fraud occurred."  <u>Geller</u>, 86 F.3d at 22-23.

---

Plaintiff.  Plaintiff paid Defendant more than $8 million in claims over a six-year period.  After making those payments, Plaintiff conducted an audit which revealed that over 94% of Defendant's claims were fraudulent.  Because Plaintiff made the payments to Defendant over the course of a six-year period, it is highly unlikely that Plaintiff will be able to locate the specific money it paid to Defendant to satisfy the disputed insurance claims.  As a result, § 502(a) does not provide a means for Plaintiff to recover the $8 million it lost due to Defendant's alleged misrepresentations.

[7] Defendant argues that the Court should dismiss Plaintiff's ERISA claims because Plaintiff failed to exhaust all available administrative remedies under the ERISA plan.  (Def.'s Br. at 15).  However, because ERISA does not preempt Plaintiff's state law claims, and Plaintiff's state law claims do not require exhaustion of administrative remedies, the Court need not consider whether Plaintiff exhausted all available administrative remedies prior to bringing this lawsuit.

Therefore, because denying Plaintiff any relief would directly conflict with the purpose of ERISA, and Plaintiff's state common law claims do not implicate any of the concerns underlying ERISA, the Court finds that § 1144(a) does not expressly preempt Plaintiff's state common law claims.

### C.  Whether Plaintiff States a Cause of Action for Common Law Fraud[8]

In New Jersey, the elements of common law fraud are:  (1) a material misrepresentation of a presently existing or past fact, (2) knowledge or belief by the defendant of its falsity, (3) intent that the other party rely on it, (4) reasonable reliance by the other party, and (5) resulting damages.  Triffin v. Automatic Data Processing, Inc., 926 A.2d 362, 368 (N.J. Super. Ct. Ap. Div. 2007).  A plaintiff must plead common law fraud with particularity under Federal Rule of Civil Procedure 9(b).  Fredericko v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).  Thus, a party claiming fraud must "plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."  Id.

Defendant argues that Plaintiff fails to plead common law fraud with particularity. Specifically, Defendant contends that (1) the Complaint fails to allege the specific terms and conditions of the ERISA plans that form the basis of Plaintiff's fraud claim; and (2) the Complaint fails to "shed light on how [Plaintiff] determined that [the] diagnoses reported by [Defendant] were 'false' or 'improper' in the first place."  (Def.'s Br. at 21).

---

[8] The Court notes that although § 503(a) does not completely preempt Plaintiff's state law claims, this Court may exercise jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  The Notice of Removal states

> (1) Horizon is a citizen of the State of New Jersey, incorporated under the laws of that State, and with its principal place of business is [sic] located in New Jersey at 3 Penn Plaza East, Newark, New Jersey; (2) Transitions is a citizen of the State of Florida, organized under the laws of the State of Florida, and with its principal place of business at 1928 NE 154th Street, Suite 100, North Miami, Florida; (3) the amount in controversy exceeds $75,000, exclusive of costs . . . .

(Doc. No. 1 ¶ 19).  Thus, the Court may exercise jurisdiction over Plaintiff's state law claims.

The Complaint alleges:

- "Defendant knowingly and intentionally submitted health insurance claims which misrepresented that it provided services for the treatment of alcohol dependency when it in fact provided treatment for other substance abuse and eating disorders," (Compl. ¶ 31);

- "In submitting health insurance claims to [Plaintiff] for payment, Defendant intended that [Plaintiff], in issuing payment for the services billed, rely on the claim forms and representations contained therein," (id. ¶ 59);

- "[Plaintiff] reasonably relied on the fraudulent health insurance claims submitted by Defendant and paid in excess of $9 million in false and fraudulent claims for services rendered," (id. ¶ 60); and

- "As a result of Defendant's fraud, Horizon has suffered harm and damages," (id. ¶ 62).

In addition to those allegations, Paragraph 37 of the Complaint contains a chart listing thirty-three claims Defendant submitted for payment between 2002 and 2008.  (Compl. ¶ 37).  One column on the chart is entitled "Actual Diagnosis and Condition Treated in Patient File," and another column entitled "Diagnosis Represented to Horizon by Defendant."  (Id.).  A brief review of the chart reveals that the items in the first column do not match the items in the second column.  (Compl. ¶ 37).  The Complaint states that Plaintiff paid Defendant $1,437,855.52 based on the allegedly fraudulent representations contained in the items listed in Paragraph 37.  (Id.).

The Court finds that with respect to the misrepresentations concerning the thirty-three insurance claims listed in Paragraph 37 of the Complaint, Plaintiff states a plausible claim for common law fraud.  However, with respect to the alleged misrepresentations concerning the claims not listed in Paragraph 37 of the Complaint, the Court finds that Plaintiff fails to state a plausible claim for fraud under Rule 9(b).  As previously mentioned, the Complaint alleges that Defendant intentionally and knowingly misrepresented that it provided Plaintiff's subscribers with alcohol dependency treatment when it actually provided Plaintiff's subscribers substance

abuse treatment and treatment for other disorders.  (Compl. ¶ 31).  In Paragraph 37 of the

Complaint, Plaintiff provides a list of thirty-three entries describing the circumstances

surrounding each of the allegedly fraudulent claims Defendant made between 2002 and 2008.

Each entry contains a description of the diagnosis represented to Plaintiff by Defendant, the

actual diagnosis and condition treated in the patient file, the allowed charge for each diagnosis,

the amount paid to Defendant, and the overpayment.[9]  (Compl. ¶ 37).  In addition, the chart

demonstrates that Plaintiff paid Defendant $1,437,855.52 as a result of Defendant's alleged

misrepresentations.  Those allegations satisfy Rule 9(b)'s requirement that a plaintiff pleading

fraud must "plead or allege the date, time, and place of the alleged fraud or otherwise inject

precision or some measure of substantiation into a fraud allegation."  Id.

However, aside from the thirty-three claims listed in Paragraph 37, the Complaint

contains no specific allegations concerning the circumstances surrounding the other insurance

payments Plaintiff made to Defendant between 2002 and 2008.  Instead, Plaintiff pleads

generally that "[f]rom January 2002 to March 2008, Defendant submitted a total of 8,652 claims

to Horizon with a diagnosis of alcohol dependency," (Compl. ¶ 38), and "[b]ased upon

[Plaintiff's] review of its patient medical records, Defendant misrepresented the diagnosis and

condition treated in 94% of the total claims submitted," (id. ¶ 40).  In order to survive

---

[9] For example, the first entry in the chart contains the following information:

| First [Name] | Last [Name] | Actual Diagnosis and Condition Treated in Patient File | Diagnosis Represented to Horizon by Defendant | Allowed Charge | Amount Paid | Maximum Benefit Payment Allowed Under Plan | Overpayment |
|---|---|---|---|---|---|---|---|
| K | A | Eating Disorder | Other and unspecified alcohol dependence | $12,500.00 | $8.750.00 | $6,200.00 | $2,550.00 |

(Compl. ¶ 37.).

Defendant's motion to dismiss, Plaintiff must put Defendant on notice of the specific date, time, and place of each allegedly fraudulent misrepresentation.  Fredericko, 507 F.3d at 200. Therefore, because the Complaint fails to allege the circumstances surrounding the allegedly fraudulent misrepresentations made by Defendant related to insurance claims that are not listed in Paragraph 37 of the Complaint, to the extent that Plaintiff seeks relief for those alleged misrepresentations, Plaintiff's claim is dismissed.

Defendant's argument that Plaintiff's fraud claim fails because the Complaint fails to allege the specific terms and conditions of the ERISA plans is unavailing.  The Complaint alleges:  (1) "[d]uring the time period encompassed by this Complaint, [Plaintiff's] benefit plans and policies of insurance provided significantly broader coverage for the treatment of alcohol dependency than for the treatment of other substance abuse dependencies and behavioral disorders," (Compl. ¶ 17); (2) "[b]y statute, during the time frame encompassed by [the] Complaint, [Plaintiff's] health benefit plans provided coverage for the treatment of alcoholism to the same extent as for any other sickness covered under the plan," (id. ¶ 26); and (3) "the SHBP plans administered by [Plaintiff] contained specific benefit limitations on certain behavioral disorders, including eating disorders, that did not apply to the treatment of alcohol dependency," (id. ¶ 28).  Those allegations put Defendant on notice of the contractual obligations that form the basis of Plaintiff's fraud claim.  Therefore, Defendant's argument that the Complaint fails to allege specific terms of the ERISA plans is unpersuasive.

Moreover, Defendant's argument that the allegations in the Complaint fail to "shed light on how [Plaintiff] determined that diagnoses reported by [Defendant] were 'false' or 'improper' in the first place" is baseless.  Paragraph 37 of the Complaint contains a column entitled "Actual Diagnosis and Condition Treated in Patient File," and a column entitled "Diagnosis Represented

to Horizon by Defendant."  (Compl. ¶ 37).  In each of the thirty-three cases listed in Paragraph 37, the items in the first column differ from the items in the second column.  At this juncture, it is not the Court's duty to assess the methodology Plaintiff employed to determine whether Defendant's diagnoses were improper, or the credibility of Plaintiff's claims.  Instead, the Court must "accept all factual allegations [in the Complaint] as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Fowler, 578 F.3d at 210.  Therefore, Defendant's argument that the Complaint fails to allege "who" determined that Defendant's diagnoses were improper, or "how" Plaintiff determined that Defendant's diagnoses were improper is unavailing.

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that Defendant's motion to dismiss the Complaint is **DENIED**.

Dated:  6/10/2011                                              /s/ Robert B. Kugler
                                                                    ROBERT B. KUGLER
                                                                    United States District Judge