NOT FOR PUBLICATION                                                        (Doc. No. 119)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

---

HORIZON BLUE CROSS BLUE SHIELD
OF NEW JERSEY,

           Plaintiff,

           v.

TRANSITIONS RECOVERY PROGRAM,

           Defendant.

Civil No. 10-3197 (RBK/KMW)

**OPINION**

---

**KUGLER**, United States District Judge:

This matter comes before the Court on Defendant Transitions Recovery Program's ("Defendant" or "Transitions") Motion to Exclude certain exhibits that Plaintiff Horizon Blue Cross Blue Shield of New Jersey ("Plaintiff" or "Horizon") submitted in support of its Motion for Partial Summary Judgment. (Doc. No. 119.) For the reasons stated herein, Defendant's Motion will be **DENIED**.

**I.     BACKGROUND**[1]

Plaintiff is a not-for-profit health service corporation that provides health coverage and benefits for its subscribers in New Jersey. Plaintiff authorizes the payment of subscribers'

---

[1] Because the facts underlying this case are established in detail in the Opinions accompanying this Court's June 10, 2011, Order denying Defendant's Motion to Dismiss, and its January 24, 2012 Order denying Defendant's Motion for Reconsideration, see Horizon Blue Cross Blue Shield of New Jersey v. Transitions Recovery Program, No. 10-3197, 2011 WL 2413173 (D.N.J. June 10, 2011); Horizon Blue Cross Blue Shield of New Jersey v. Transitions Recovery Program, No. 10-3197, 2012 WL 243349 (D.N.J. Jan. 24, 2012), and the many of facts underlying this particular issue are also set forth in detail in the Opinion accompanying this Court's March 28, 2014, Order granting Defendant's Motion to Strike certain exhibits, see Horizon Blue Cross Blue Shield of New Jersey v. Transitions Recovery Program, No. 10-3197, 2014 WL 1315661 (D.N.J. Mar. 28, 2014), the Court recites only the facts relevant to the instant motion.

claims subject to the conditions, limitations, and exclusions contained in its health benefits plans. Defendant is a drug and alcohol treatment center located in Florida, which provided treatment to subscribers of Plaintiff's health benefit plans, and submitted claims to Plaintiff for payment of that treatment.  Plaintiff alleges that, between January 2002 and March 2008, Defendant submitted 8,652 claims to Plaintiff that contained diagnoses of alcohol dependency—a diagnosis whose treatment receives broader coverage from Plaintiff's plans than is afforded to treatment of other substance abuse dependencies and behavioral disorders.  Plaintiff alleges that it conducted an audit of Defendant's records and concluded that Defendant misrepresented non-alcohol-related diagnoses as alcohol dependencies in order to receive Horizon's broader coverage.

After extensive discovery and related disputes, on July 26, 2013, Plaintiff filed a Motion for Partial Summary Judgment, along with a Certification prepared by Christine S. Orlando, the attorney "principally responsible for the representation of Plaintiff Horizon Blue Cross Blue Shield of New Jersey."  (Certification of Christine S. Orlando ("Orlando Cert.") ¶ 1).  Attached to Ms. Orlando's Certification were a number of exhibits.  (See generally Doc. No. 77.)  In its Motion for Partial Summary Judgment, Plaintiff argued that it is entitled to summary judgment:

> on those claims where [Defendant] admits that it misrepresented the diagnosis contained on the health insurance claim form and received payments beyond the benefit limits contained in the subscriber's benefit plan . . . . [Specifically, Plaintiff] is entitled to summary judgment on those claims in which [Defendant] reported a diagnosis of alcohol dependency which contradicts the diagnosis contained in its own treatment records and made by its treating physicians.

(Pl.'s Mot. for Summ. J. at 2.)

As stated above, Ms. Orlando submitted a number of exhibits to her Certification that set forth specific patient information and data.  Defendant moved to strike Exhibits R, T, X, BB, EE, II, LL, PP, SS, and VV (the "Challenged Exhibits"), which purported to set forth the health insurance claims submitted by Defendant to Plaintiff for Patients B.C., C.H., V.F., T.G., M.P.,

2

S.K., C.E., S.N., H.H., and K.A.  (Doc. No. 95).  In its Opinion granting Defendant's Motion, the Court found that plan data for certain patients had not been made available to Defendants at the time they deposed Jim Howell ("Howell"), Plaintiff's Lead Investigator who was entrusted with the investigation and handling of this matter.  Defendant was consequently unable to adequately question Howell concerning how Plaintiff calculated its damages and how Howell arrived at the numbers found in a document he prepared (the "Howell Findings and Calculations").  Similarly, Defendant was unable to question Howell at his original deposition regarding apparent discrepancies in the amounts set forth in the Howell Findings and Calculations and the Challenged Exhibits.  Because this left Defendant without the ability to accurately determine how much Plaintiff actually sought in damages, or rely upon any number computed by Plaintiff, on March 27, 2014, the Court issued an Order and Opinion granting Defendant's Motion to Strike.  (Doc. Nos. 104, 105.)  Therein, the Court granted an additional thirty day period for discovery with respect to the Challenged Exhibits and related damages figures, denied Plaintiff's Motion for Partial Summary Judgment without prejudice, and ordered that the parties refile dispositive motions at the conclusion of the additional discovery period.  On April 11, 2014, Plaintiff requested a thirty day extension for discovery, due to Ms. Orlando being out of the office on maternity leave, (Doc. No. 107), which the Court granted on April 25, 2014.  (Doc. No. 109.)

      Transitions served upon Horizon a Notice of Depositions Pursuant to Fed. R. Civ. P. 30(b)(6) on May 5, 2014, demanding Horizon produce a corporate representative to testify about Exhibits R, T, X, Y, Z, BB, CC, EE, FF, II, LL, MM, PP, SS, and VV to Ms. Orlando's Certification, as well as "all documents produced to [Defendant's attorneys] via electronic mail on May 5, 2014 by [Plaintiff's attorney], including, but not limited to, the contents, creation and

purpose of same." (Ex. D to Werner Cert., Notice of 30(b)(6) Deposition.)  According to Defendant, the deposition was a "waste of time," because Horizon produced Howell, who had "no knowledge of who created the challenged exhibits, how they were created or who had determine what the 'appropriate' diagnosis was for purpose of conducting the calculations therein."  (Def.'s Br. at 5.)  Plaintiff contends that Howell was an adequate 30(b)(6) representative, as he reviewed the summaries found in the Challenged Exhibits prior to the deposition, and was produced to "clarify any mathematical inconsistency."  (Pl.'s Opp'n at 12-13.)  According to Horizon, Howell was able to explain how the damages calculations in the Challenged Exhibits were derived, but was not asked to do so, as Transitions focused primarily on ascertaining the identity of the individual(s) that compiled the exhibits.  (Id. at 13.)

Following what Transitions considered a failed attempt to obtain the information it sought by way of deposition, Defendant served additional interrogatories, requests for production, and requests for admission on May 22, 2014.  (Def.'s Br. at 5.)  Defendant also requested a sixty day extension for discovery on May 27, 2014, due to the issues that arose when Plaintiff produced Howell as its 30(b)(6) representative to testify concerning the damages listed in the Challenged Exhibits, how they were created, when they were created, and by whom or at whose direction they were created.  (Doc. No. 110.)  After a phone conference with the parties, the Court granted a sixty day extension for discovery on May 30, 2014.  (Doc. No. 111.)

Based on information provided in Plaintiff's responses to the interrogatories, Defendant served notices of deposition for Randi Vuich, a paralegal at Connell Foley, and Robert Norcia, a former intern at Connell Foley, on July 1, 2014.  (Def.'s Br. at 7; Ex. I to Werner Cert., 30(b)(1) Deposition Notices.)  Rather than produce Mr. Vuich or Mr. Norcia, Horizon sent Certifications from the same on July 15, 2014.  (See Ex. K to Werner Cert., Randi Vuich and Robert Norcia

4

Certs.; see also Def.'s Br. at 7.)  The next day, Defendant sent the Court another letter, requesting an immediate status conference, citing the same discovery issues as before.  (Doc. No. 113.)  The day after, a second phone conference was held, and the Court issued an order directing Horizon to provide "[Transitions] with information pertaining to [V.F., T.G., M.P., S.K., and C.E.,] the five unaudited patients such that Defendant can determine who made the diagnosis determination for these five patients and why such diagnosis was made, or to point to portions of the record that already contain this information," by July 24, 2014.  (Doc. No. 114.)  Horizon responded by way of a letter from Ms. Orlando on July 24, 2014.  (Ex. L to Werner Cert., July 24, 2014, Letter from Orlando to Werner ("July 24 Letter").)  Despite Plaintiff's letter, Transitions was unsatisfied with the response, believing Horizon had still failed to identify who made the decision to ascribe a principle diagnosis of "substance abuse" for each of the five unaudited patients.  (Def.'s Br. at 8-11.)

      Thereafter, Defendant requested a scheduling conference to determine how the parties should move forward with motion practice, (Doc. No. 116), which was held before Magistrate Judge Williams on August 21, 2014, and at which the deadline was set for Defendant's Motion to Exclude certain exhibits on or before September 19, 2014.  (Doc. No. 118.)  On September 19, 2014, Transitions filed the instant Motion to Exclude any "damages calculations" for patients V.F., T.G., M.P., S.K., and C.E. (the "Unaudited Patients"), which are found in Exhibits X, BB, EE, II, and LL, respectively (the "Unaudited Patient Exhibits"), pursuant to Fed. R. Civ. P. 37(c) and (d).  (Doc. No. 119.)  Transitions argues that it continues to be denied a meaningful opportunity to examine and challenge these documents.  As this Motion is fully briefed, the Court turns to the parties' arguments.

## II. LEGAL STANDARD

Rule 26(a) requires voluntary disclosure by the parties of "a computation of each category of damages claimed by the disclosing party." Fed. R. Civ. P. 26(a)(1)(A)(iii). Parties are obligated under Rule 26(e) to supplement any disclosures they have made:

> [a] party who has made a disclosure under 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court.

Fed. R. Civ. P. 26(e). If a party fails to comply with Rule 26(a) or (e), "the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

In deciding whether to impose sanctions against a plaintiff under Rule 37(c)(1), the Court considers four factors: (1) prejudice or surprise to the defendant; (2) the ability of the plaintiff to cure the prejudice; (3) the likelihood of disruption; and (4) the plaintiff's bad faith or unwillingness to comply. See Newman v. GHS Osteopathic, Inc., 60 F.3d 153, 156 (3d Cir. 1995). In addition to preventing the non-compliant party from using the challenged information or witness to supply evidence on a motion, the Court may also "order payment of the reasonable expenses, including attorney's fees, caused by the failure; . . . inform the jury of the party's failure; and . . . impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." Fed. R. Civ. P. 37(c).

Rule 37 is "written in mandatory terms and is designed to provide a strong inducement for disclosure of Rule 26(a) material." Newman, 60 F.3d at 156 (internal citation marks and quotation omitted). However, district courts must "exercise particular restraint in considering motions to exclude evidence." ABB Air Preheater v. Regenerative Envtl. Equip. Co., 167 F.R.D.

668, 671 (D.N.J. 1996) (citations omitted); see also id. (citing In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 791-92 (3d Cir. 1994) (stating that "[t]he Third Circuit has, on several occasions, manifested a distinct aversion to the exclusion of important testimony absent evidence of extreme neglect or bad faith on the part of the proponent of the testimony").

### III.  DISCUSSION

Transitions argues that it is still "completely in the dark as to how and when the damage calculations relative to the Unaudited Patients were performed; including … who made the diagnoses upon which those calculations were based." (Def.'s Br. at 1.) Accordingly, it requests that this Court exclude the Unaudited Patient Exhibits, due to Horizon's alleged failure to comply with its obligations under Rule 26.

Regarding whether Plaintiff complied with Rule 26, the Court finds that Plaintiff has so complied, and exclusion under Rule 37(c) is inappropriate. As stated above, Rule 26(a) requires that a party provide "a computation of each category of damages claimed by the disclosing party--who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material … on which each computation is based." Fed. R. Civ. P. 26(a)(1)(iii). Additionally, Rule 26(e) provides that a party must supplement a disclosure made under Rule 26(a) if it learns that the original disclosure was incomplete, if additional corrective material is newly available, or if ordered by the Court. Fed. R. Civ. P. 26(e)(1).

Horizon argues that it was unable to provide the damage calculations for the Unaudited Patients until the close of discovery, when Transitions produced the treatment records for those patients. (Pl.'s Opp'n at 19.) Thereafter, Plaintiff apparently relied on the same explanation of how it extrapolated the damages in its own previous audit results to explain how it calculated the damages for the Unaudited Patients. (Id.) According to Horizon, it is the same methodology

employed and evident in its Amended Complaint. (Id. at 26.) When Defendants raised an issue regarding how Plaintiff computed certain numbers, in light of plan documents that had been missing from the record when Transitions deposed one of Horizon's key witnesses, Plaintiff provided that same witness for another deposition, as well as interrogatories to more completely describe the mathematics and method behind its calculations. Once Defendant raised a new issue concerning who made the diagnoses Plaintiff relied upon in calculating the damages for the Unaudited Patients, Horizon responded by letter, describing its reasoning for relying on the diagnoses of Transitions own experts and witnesses, with detailed citations to the record. In light of the information provided by Plaintiff regarding how the computation was made, the reasoning involved, and documents relied on that were already in the record, it appears that Horizon complied with its obligation under Rule 26.

However, assuming Plaintiff had failed to provide materials in accordance with Rule 26, the Court still finds that the circumstances favor admitting the challenged evidence. Transitions argues Plaintiff's failure to provide the information supporting its damages calculations for the Unaudited Patients was not substantially justified. Based on the four factors considered under Rule 37(c)(1), the Court does not agree.

First, it does not appear that Transitions would be unduly prejudiced or surprised by the admission of the Unaudited Patient Exhibits, as Plaintiffs apparently employed the same methodology for calculating these damages as they did for calculating the damages for the unchallenged patient damages. It appears that Horizon even described the methodology and reasoning behind its damages calculations, including its decision to rely on the diagnoses of Transitions own experts and witnesses, in its Motion for Partial Summary Judgment. (See Pl.'s Mot. for Summ. J. at 5-16.) Second, any prejudice or surprise that may have existed appears to

have been mitigated by Plaintiff's disclosures made after this Court's March 27, 2014, Order, and in Plaintiff's arguments made in opposition to the instant Motion. Third, Defendant has not shown any likelihood of disruption, particularly as Horizon has not sought to enter any new evidence that requires reviewing, and neither party has argued that they would require additional time or discovery to prepare for filing and briefing future dispositive motions. Finally, the Court will discuss why the record does not appear to reflect that Plaintiff showed any notable bad faith or unwillingness to comply with its obligations and the Orders of this Court.

First, Plaintiff contends that Transitions was supplied, via certification and interrogatory answers, with detailed explanations as to how each spreadsheet in the Challenged exhibits was created, and with a step-by-step explanation of the mathematic calculation employed in response to this Court's March 27, 2014, Order. (Pl.'s Opp'n at 20.) The Court finds that Horizon did comply with that Order, having already provided Transitions with the plan information discussed in the Court's accompanying Opinion, and having provided Howell to testify as a 30(b)(6) representative to discuss and clarify how the damages calculations were made in the Challenged Exhibits, and explain any discrepancies.

Apparently, however, Defendant is no longer concerned with the method of calculating the damages, i.e., the mathematics. Instead, its concern is over who determined each of the Unaudited Patients had a principle diagnosis of substance abuse, and why Horizon determined that none of the Unaudited Patients would have been entitled to receive benefits other than substance abuse benefits under the terms of their plans. (See Def.'s Rep. at 3.)[2] Plaintiff argues

---

[2] It bears noting that the information Transitions currently moves to exclude is not the same information it sought to exclude in its first Motion to Strike. (Compare Mot. to Strike (Doc. No. 95) (moving to strike the Challenged Exhibits on the basis that the damages calculations were based on documents not previously produced by Plaintiff and the damages calculations appeared for the first time in Plaintiff's Motion for Partial Summary Judgment); with Mot. to Excl. (Doc. No. 119) (moving to exclude the Unaudited Patient Exhibits on the basis that Horizon had not provided information regarding who made the principal diagnoses for the Unaudited Patients).) Transitions appears to have raised, for the first time, concern regarding who made the diagnoses relied on by Horizon during the July 17,

9

this information was also previously available to Defendant, and provided in accordance with this Court's July 17, 2014, Order. (Pl.'s Opp'n at 16-17.) The Court finds that though Plaintiff's July 24 Letter does not spell out <u>who</u> at Horizon or Connell Foley decided to rely on the chosen line of reasoning used for calculating damages in the Unaudited Patient Exhibits, it does thoroughly explain <u>how</u> Plaintiff reasoned, and cites specifically to portions of the record where it found the necessary premises.

In the July 24 Letter Horizon claimed that, by Defendant's own assertions and the testimony of Norton Lee Barchan, Transitions only treated patients who primarily received treatment for alcohol or substance abuse. (<u>See</u> July 24 Letter at 2; <u>see also</u> Pl.'s Opp'n at 4 n.1 (claiming that Transitions primarily treats patients for drug or alcohol dependencies, and other conditions are only treated if a person is treated primarily for drugs or alcohol).) It also noted that Transitions never asserted that services other than alcohol or substance abuse treatment were rendered to patients insured by Horizon, and that there is no evidence that Transitions complied with any plan provisions which would entitle it to benefits for biologically-based mental illnesses under the applicable plans. (July 24 Letter at 2.) In further support of this premise, Plaintiff pointed to the expert reports of Laurie Deerfield, D.O., and Louis E. Baxter, Sr., M.D., who, Plaintiff noted, were never called on by Defendant to opine as to whether the Unaudited Patients met the criteria for any biologically based mental disorder, or whether Transitions could have submitted claims to Horizon for any biologically based mental disorder. (<u>Id.</u> at 2-3.)

Horizon went on in the July 24 Letter to describe how Dr. Baxter and Dr. Deerfield each found the five Unaudited Patients had primary diagnoses of drug dependency, and that Steven Kahn, M.D. and Richard Seely, M.D. submitted claims coded for drug dependency for patients

---

2014, phone conference with this Court. For this reason alone it appears any delay on Horizon's part in providing the information sought by Defendant was "substantially justified" due to the shifting nature of Transition's requests.

V.F., T.G., and M.P. (July 24 Letter at 3-4.) In its brief, Horizon points out that all of the Unaudited Patients were treated by Dr. Kahn, and he testified that treating physicians list their diagnosis on Axis I in order or importance, with the principal diagnosis listed first. (Pl.'s Opp'n at 16-17, 21.) Each of the Unaudited Patients was diagnosed by Dr. Kahn on Axis I with substance dependency as the principal diagnosis, (id. at 17, 21-22,)[3] and there was "nowhere else" in the Unaudited Patients' treatment records where a principal diagnosis would be recorded. (Id. at 5.) Additionally, Plaintiff notes that Defendant admitted, in its Rule 30(b)(6) deposition testimony and through its experts, that the Unaudited Patients did not suffer from alcohol dependence, and the all of the claims submitted by Transitions to Horizon for alcohol dependence treatment were false. (Id. at 16, 21.)

Horizon relied upon the health insurance claims submitted by Transitions, (id. at 3, 5), and applied plan benefits and limits, and paid claims based upon the principal diagnosis reported by Transitions. (Id. at 3.) Simrita Mehoke, the Director of Provider Reimbursement and Implementation Department at Horizon, certified that Horizon "applies plan benefits and limits, and pays claims for facilities based upon the principal diagnosis reported by the facility on the health insurance claim form. The secondary and tertiary diagnoses reported by the facility … are not used in processing claims, applying plan benefits and limits, or paying facility claims." (July 24 Letter at 2 (citing Mehoke Cert. at ¶ 5.)) Therefore, according to Plaintiff, if a patient at Transitions is being treated principally for alcohol or substance dependence, "the only relevant and applicable benefit provision are for alcohol and substance dependence." (July 24 Letter at 2.) Using what appears to be deductive reasoning, Horizon concluded that the primary diagnoses

---

[3] See Ex. F to Orlando Cert., Deposition Testimony of Laurie Deerfield, D.O., at 29:17-30:16 (describing how a psychiatric evaluation contains a series of observations described by Axis I – V, with Axis I setting forth the principal diagnosis; Axis II identifying personality disorders; Axis III identifying contributing medical conditions; Axis IV identifying "stressors;" and Axis V recording the global assessment of findings").

for the Unaudited Patients were necessarily for substance dependence, and it would credit Transitions only the benefits available for substance dependency treatment under each plan for the Unaudited Patients, counting the remainder of benefits paid under the auspices of alcohol dependency treatment as its calculated damages.

Based on the foregoing, it appears Plaintiff told Transitions <u>why</u> it determined the principal diagnosis for each Unaudited Patient was substance dependency, based soley on Defendant's own experts' diagnoses, and <u>why</u> each Unaudited Patient would have been entitled to only alcohol or substance dependency benefits under the applicable plans, as early as July 24, 2014. Its reasoning was based on the fact that Dr. Kahn's principal diagnoses of substance dependency were confirmed by Drs. Deerfield and Baxter for the Unaudited Patients; the fact that Horizon only applied plan benefits and limits, and paid claims for facilities based upon the principal diagnosis; the fact that Transitions only treated patients whose principal issue was alcohol or substance dependency; and the fact that there is no evidence in the record that Transitions did or was certified to submit claims based on biological-mental illnesses under the applicable Horizon plans. Moreover, Horizon also cites to specific portions of the record in support of its reasoning. (<u>See generally</u> July 24 Letter.)

Accordingly, the Court finds that Plaintiff complied with its July 17, 2014, Order that it "provide [Transitions] with information pertaining to the five unaudited patients such that Defendant can determine who made the diagnosis determination for this five patients and why such diagnosis was made, <u>or point to portions of the record that already contain this information</u>." (Doc. No. 114.)[4]

---

[4] The letter sent by Defendant in response to Plaintiff's July 24 Letter is a telling acknowledgment that Horizon did as this Court required, despite its protestations to the contrary. (<u>See</u> Ex. S to Werner Cert., July 29, 2014, Letter from Werner to Orlando ("July 29 Letter").) In that letter, Defendant takes issues with Horizon's position that Transitions could not seek reimbursement for conditions other than drug or alcohol dependency, Horizon's policy of

In light of the factors considered under Rule 37(c)(1), the Court finds that Plaintiff's actions were harmless and none of the factors weigh in favor of exclusion.  All of the information, including the principal diagnoses on which Plaintiff rely, is in the record and is readily ascertainable by Defendants.  Accordingly, the Court will not bar Plaintiff's use of the Unaudited Patient Exhibits in a subsequent motion.

### IV.   CONCLUSION

For the reasons stated above, Defendant's motion will be **DENIED**.  An appropriate Order will issue today.


Dated:   3/13/2015                                                                         s/ Robert B. Kugler
                                                                                                              ROBERT B. KUGLER
                                                                                                              United States District Judge

---

only applying benefits and reimbursements based on a patient's principal diagnosis, and Horizon's decision to use the substance dependency diagnosis for each of the Unaudited Patients, made by Dr. Kahn, as the basis for its determination that substance dependency was the principal diagnosis, despite other diagnoses noted for some of the Unaudited Patients.  (See id.)  Whatever issues Transitions might have regarding why Horizon arrived at its conclusion, it can no longer credibly assert that it is unaware of why Plaintiff reasoned the way it did, or where in the record Plaintiff looked to support its position.