NOT FOR PUBLICATION                                    (Doc. Nos. 129, 130, 133, 136)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

_____
                                                    :
HORIZON BLUE CROSS BLUE SHIELD   :
OF NEW JERSEY,                                   :
                                                    :
                    Plaintiff,                    :
                                                    :        Civil No. 10-3197 (RBK/KMW)
          v.                                        :
                                                    :        **OPINION**
TRANSITIONS RECOVERY PROGRAM,   :
                                                    :
                                                    :
                    Defendant.                   :
_____ :

**KUGLER**, United States District Judge:

This matter comes before the Court on Plaintiff Horizon Blue Cross Blue Shield of New

Jersey's ("Horizon") Motion for Partial Summary Judgment (Doc. No. 130) and Motion for

Summary Judgment on Defendant Transitions Recovery Program's ("Transitions") Counterclaim

(Doc. No. 129), and Transitions' Motions for Summary Judgment on Horizon's Complaint (Doc.

No. 133) and on Transitions' Counterclaim (Doc. No. 136).  For the foregoing reasons,

Horizon's Motion for Partial Summary Judgment (Doc. No. 130) is granted-in-part and denied-

in-part, Transitions' Motion for Summary Judgment (Doc. No. 133) on Horizon's Complaint is

granted-in-part and denied-in-part (Doc. No. 136), Transitions' Motion for Summary Judgment

on the Counterclaim is denied, and Horizon's Motion for Summary Judgment on the

Counterclaim (Doc. No. 129) is granted.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### (i)   The Parties

Horizon is a not-for-profit health service corporation that provides its members with health coverage and benefits.  Plaintiff authorizes the payment of subscribers' claims subject to the conditions, limitations, and exclusions contained in its health benefits plans.  Transitions is a residential treatment center located in Florida that provided treatment to subscribers of Horizon's health benefit plans and submitted claims to Horizon for payment of that treatment.  It provides "standard care treatment, partial hospitalization, and out-patient treatment for people who are suffering from drug and alcohol problems."  (Pl.'s Statement of Material Facts ("Pl.'s SMF") ¶ 15, Doc. No. 130.)  It is also licensed to provide patients with mental health treatment, although it usually provides such care only when the patient is also suffering from a drug or alcohol problem.  (Id.; see also Barchan Dep. 44:3–16, Ex. CCCC, Doc. No. 132.)

### (ii)   Procedural Background

The instant matters stems from Horizon's allegations that between January 2002 and March 2008, Transitions submitted fraudulent claims to Horizon containing diagnoses of alcohol dependency—a diagnosis whose treatment receives broader coverage than is afforded to treatment of other substance abuse dependencies and behavioral disorders.  Horizon commenced this action on May 24, 2010, in the Superior Court of New Jersey.  Transitions removed the Complaint to this Court on June 23, 2010, (Doc. No. 1), and subsequently moved to dismiss Horizon's Complaint on grounds that the claims were preempted by the Employee Retirement Income Security Act of 1974 (ERISA) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 11.)  On June 10, 2011, this Court denied Transitions' Motion to Dismiss, rejecting both its preemption argument and its Rule 12(b)(6) argument.  (Doc. Nos. 23–

24.)  Transitions moved for reconsideration of the Court's preemption finding, (Doc. No. 26.), which the Court also denied.  (Doc. No. 41).

On March 13, 2012, Horizon filed an Amended Complaint, (Doc. No. 44), and Transitions filed its Answer and Affirmative Defenses on April 26, 2012. (Doc. No. 52.) Transitions then filed an Amended Answer and Counterclaim on March 29, 2013.  (Doc. No. 67.)  Transitions' Counterclaim asserts that Horizon violated ERISA by accusing it of committing fraud and providing it with no opportunity to appeal Horizon's overpayment determination.  Having completed discovery, each party now moves for summary judgment on both Horizon's fraud claims and on Transitions' Counterclaim.

      **(iii)**    **The Facts[1]**

The relevant facts are as follows.

Horizon processes and pays claims submitted by health care providers, including Transitions, based upon information on a health insurance claim form.  (Cert. of Simrita Mehoke ¶ 2.)  This claim form includes all the relevant information necessary to process and pay the claim, including the patient's demographics, the patient's diagnoses, and the services and treatment rendered.  (Id.)  The patient's diagnoses are indicated on the form through International Classification of Disease ("ICD") Codes, with different codes corresponding to different diagnoses.  (Id. ¶ 3.)  For example, the ICD code for alcohol dependency is 303.9, while the ICD code for opiate dependency is 304.0.  (Pl.'s SMF ¶ 48–49.)  A health care provider is able to submit a claim form listing multiple diagnoses; the claim form contains a specific box for the

---

[1] When considering a party's motion for summary judgment, the Court views the facts underlying the claims in the light most favorable to the non-moving party.  See Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., 998 F.2d 1224, 1230 (3d Cir. 1993).  In this instance, the Court relies on facts contained in the parties' opposing Rule 56.1 statements to the extent those facts are undisputed.  Otherwise, the Court relies on the exhibits contained in the extensive factual record.

patient's "principal diagnosis" and several adjacent boxes for any ancillary diagnoses.  (Mehoke Cert. ¶ 3.)  Horizon does not apply plan benefits or pay claims according to any secondary or tertiary diagnoses.  (Id.)  Thus, benefits for alcohol dependency were triggered only when it was the principal diagnosis. (Id. ¶ 12.)

During the relevant time period, Yamile Gamboa ("Ms. Gamboa") was Transitions' billing manager and was responsible for preparing and submitting health insurance claim forms to Horizon for reimbursement.  (Pl.'s SMF ¶ 55.)  Transitions obtains information necessary for billing from patients' treatment records.  (Id. ¶ 56.)  However, for the claims at issue in the instant case, Ms. Gamboa received the diagnosis code from Dominic Sirianni ("Mr. Sirriani") on a "sticky," which she then recorded on the claim form prior to billing Horizon.  (Id. ¶ 65.)  At the time, Mr. Sirriani was also chiefly responsible for verifying patients' benefit coverage.  (Id. ¶ 72.)  Because Transitions verified benefits prior to admission, it knew the benefit limits prior to submitting its claims for reimbursement.[2]  (Id. ¶ 71.)

Transitions' co-medical directors, Dr. Richard Seely ("Dr. Seely") and Dr. Steven Kahn ("Dr. Kahn"), are responsible for diagnosing and treating patients.  (Id. ¶ 16.)  To ensure accuracy in the treatment records and confirm that that each patient has been properly diagnosed, Dr. Seeley and Dr. Kahn conduct peer reviews and evaluate one another's charts. (Id. ¶ 35.)  If either notices that a diagnosis was overlooked or not recorded in the patient's file, it would be noted during the peer review process.  (Id. ¶ 36.)

---

[2] Transitions verifies benefits prior for patients prior to admitting, diagnosing, and treating the patients.  (Pl.'s SMF ¶¶ 38.)  The verification process involves contacting insurers—such as Horizon—and inquiring about patients' benefit levels for "substance dependence, alcohol dependence, and mental health benefits for both residential and out-patient treatment.  (Id. ¶ 39.)  Transitions records patients' benefit levels in writing on a document titled "Insurance Verification Form."

Horizon pays claims based on the patient's "principal diagnoses."  According to the DSM-IV, "the *principal diagnosis* is the condition established after study to be chiefly responsible for occasioning the admission of the individual."  (Orlando Cert., Ex. J, Doc. No. 130.)  A diagnosis of substance abuse or mental illness is reported as an Axis I diagnosis, as that term is defined by the DSM-IV.  (Pl.'s SMF ¶ 24; Def.'s Opp. SMF ¶ 24.)  According to the DSM-IV,

> [w]hen the principal diagnosis is an Axis I disorder, this is indicated by listing it first. The remaining disorders are listed in order of focus of attention and treatment.  When a person has both an Axis I and an Axis II diagnosis, the principal diagnosis or the reason for visit will be assumed to be on Axis I unless the Axis II diagnosis is followed by the qualifying phrase "Principal Diagnosis" or "Reason for Visit."

(Orlando Cert., Ex. J at 3.)

Transitions' 30(b)(6) representative Eloy Paez testified that there is "nowhere else" in a treatment record where alcohol dependence would be recorded other than an Axis I diagnosis. (Deposition of Eloy Paez, dated Dec. 18, 2012 ("Paez Dep.") 275:25–276:3.)  The parties dispute, however, where to find this Axis I diagnosis in a patient's treatment record.   Transitions argues that although alcohol dependence is an Axis I diagnosis, "that diagnosis need not be recorded in any particular place in the treatment record, but instead may be gleaned from a review of the entire record."  (Def.'s Opp. SMF ¶¶ 24, 26.)

Horizon maintains a Special Investigations Unit ("SIU"), which is a "unit of investigators that collectively investigate allegations of fraud."  (Howell Dep. 18:13–14, Doc. No. 133, Ex. C.) James Howell III ("Howell") was an investigator with the SIU and conducted a post-payment audit on Transitions after noticing that Transitions was a "high utilizer" of the ICD code for alcohol dependence.  (Id. 35:16–19; Howell Dep. 186–187:11, Doc. No. 152, Ex. LLL.)  After noticing this trend, Howell ran the data and discovered that Transitions was either the first or

second highest utilizer of ICD code for alcohol dependence out of all providers submitting claims to Horizon.  (Howell Dep. 187:1–20.)

Thereafter, in or about 2008, Howell conducted a post-payment audit of Transitions, reviewing fifty-six of Transitions' treatment records.  (Def.'s SMF ¶¶ 13–14, Doc. No. 133.)  Of those fifty-six records, sixteen were randomly selected from the mid-range to highest paid records.  (Howell Dep. 121:20–122:1, Doc. No. 133, Ex. C.)  He used online software recommended by Horizon to randomly select the remaining records. (Def.'s SMF ¶ 67(c); Pl.'s SMF ¶ 67.)  Out of the fifty-six treatment records reviewed, Horizon determined that thirty-three of those records did not support a diagnosis of alcohol dependence.  (Letter from James Howell, Werner Cert., Ex. L, Doc. No. 133.)  By way of letter dated February 9, 2009, Horizon sent a demand letter seeking repayment of $14,185,864.00 for overpaid benefits.  (Def.'s SMF ¶ 16.) The alleged overpayment is the subject of the instant litigation.

## II.    LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine dispute of material fact exists only if the evidence is such that a reasonable jury could find for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the

absence of a genuine issue of material fact" or by "'showing' —that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." <u>Celotex</u>, 477 U.S. at 325.

If the party seeking summary judgment makes this showing, it is left to the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322.  Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" <u>Corliss v. Varner</u>, 247 Fed. App'x. 353, 354 (3d Cir. 2007) (quoting <u>Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.</u>, 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  <u>Anderson</u>, 477 U.S. at 249.  Credibility determinations are the province of the fact finder, not the district court.  <u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992).

## III.   DISCUSSION

Horizon has brought three claims against transitions:  (1) violation of the New Jersey Insurance Fraud Prevention Act ("IFPA"), (2) common law fraud, and (3) negligent misrepresentation.  (<u>See</u> Pl.'s Amended Compl., Doc No. 44.)  Transitions moves for summary

judgment on all of Horizon's claims.  (Doc. No. 133.)  Horizon moves for partial summary judgment on its IFPA claim.  (Doc. No. 137.)

To prevail on a claim of common law fraud, a plaintiff must prove each of five elements: (1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely upon it; (4) reasonable reliance thereon by the other person, and (5) resulting damages.  Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997). The elements of fraud are essentially the same for negligent misrepresentation except the latter does not require scienter.  See Rosenblum, Inc. v. Adler, 461 A.2d 138, 142–142 (N.J. 1983) ("Negligent misrepresentation is . . . an incorrect statement, negligently made and justifiably relied on, [and] may be the basis for recovery of damages for economic loss . . . sustained as a consequence of that reliance.").

The IFPA is also similar—but not identical—to common law fraud.  The statute states in relevant part,

A person or a practitioner violates this act if he:

Presents or causes to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy . . . knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim . . . .

N.J.S.A. 17:33A-4(a)(1).  Thus, Plaintiff must essentially prove (1) knowledge, (2) falsity, and (3) materiality.  "Unlike common law fraud, proof of fraud under the IFPA does not require proof of reliance on the false statement or resultant damages . . . nor proof of intent to deceive." Lincoln Nat. Life Ins. Co. v. Schwarz, No. 09–03361 (FLW), 2010 WL 3283550, at *16 (D.N.J. Aug. 18, 2010) (citing Liberty Mut. Ins. Co. v. Land, 892 A.2d 1240, 1246 (N.J. 2006) and State v. Nasir, 809 A.2d 796, 802 (N.J. Super. Ct. App. Div. 2002)).  The burden of proof to show a violation of the IFPA is preponderance of the evidence, which is lower than the "clear and

convincing evidence" standard required to prove common law fraud.  <u>Certain Underwriters at</u>

<u>Lloyd's of London v. Alesi</u>, 843 F. Supp. 2d 517, 530 (D.N.J. 2011).

**A. Transitions' Motion for Summary Judgment**

     **(i)    Preemption**

     Transitions' first argues that it is entitled to summary judgment because Horizon's claims

are preempted by section 514(a), ERISA's broad preemption provision. (Def.'s Mot. Summ. J.

13, Doc. 133.)  Section 514(a) of ERISA states as follows:  "Except as provided in subsection (b)

of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede

any and all State laws insofar as they may now or hereafter <u>relate to</u> an employee benefit plan . . .

."  29 U.S.C. § 1144(a) (emphasis added).  District courts within the Third Circuit must

undertake a two-step inquiry to determine whether a state law relates to an insurance plan.  First,

the court must determine whether the state law (1) is specifically designed to affect employee

benefit plans, (2) singles out such plans for special treatment, or (3) creates rights or restrictions

that are predicated on the existence of such a plan.  <u>United Wire, Metal & Mach. Health &</u>

<u>Welfare Fund v. Morristown Mem. Hosp.</u>, 995 F.3d 1179, 1192 (3d Cir. 1993)).  Second, a state

law "may be preempted . . . if its effect is to dictate or restrict the choices of ERISA plans with

regard to their benefits, structure, reporting and administration, or if allowing states to have such

rules would impair the ability of a plan function simultaneously in a number of states."  <u>Id.</u> at

1193.

     According to Transitions, the Court's inquiry ends at step one because Horizon's claims

are predicated on the existence of ERISA plans.  (Def.'s Mot. Summ. J. 16–19.)  Transitions

argues that Horizon made its liability determinations by reviewing the Summary Plan

Descriptions of patients' health coverage.  (<u>Id.</u>)  This review, Transitions asserts, demonstrates

that Horizon's causes of action are predicated on the existence of—therefore "relate to"—ERISA plans.

This Court has previously opined that section 514(a) does not preempt Horizon's claims because the claims do not "relate to" ERISA plans.  See Horizon Blue Cross Blue Shield of N.J. v. Transitions Recovery Program, No. 10-3197, 2011 WL 2413173, *5–10 (D.N.J. June 10, 2011) (denying Transitions' motion to dismiss partly because it found that section 514(a) did not preempt Horizon's state law claims).  Transitions posits that the factual record developed since the Court last considered the matter necessitates revisiting the issue.  (Def.'s Mot. Summ. J. 17–19.)  The Court disagrees and reiterates its previous ruling on this issue.

The IFPA "does not create rights and restrictions that are predicated upon the existence of an ERISA plan.  Instead, the NJIFPA regulates the conduct of insureds seeking insurance benefits, and allows an insurance company to bring a cause of action against an insured who attempts to procure benefits by fraudulent means."  Horizon, 2011 WL 1413173, at *6.  That Horizon references ERISA plans to make out its claims does not affect the Court's previous analysis.  Indeed, in its earlier decision on this issue, this Court considered that Horizon might refer to health benefit plans to prove its state law claims and yet still held that the claims were not preempted.  Id. at *8–9.  That Horizon does in fact refer to the existence of health benefit plans in making out its claims does not compel the Court to reverse its previous determination.  For these reasons, the Court again holds that section 514(a) of ERISA does not preempt Horizon's state law claims.

 (ii)    **Horizon's Audit**

Transitions next argues that it is entitled to summary judgment because the review that led to Horizon's overpayment determinations was per se invalid.  (Def.'s Mot. Summ. J. 19–24.)

To this end, Transition relies on the expert testimony of Kristin Kucsma ("Kucsma"), who opines that Howell's overpayment estimation has no significant statistical basis because his selection and extrapolation methods, among other things, were flawed.  (Kucsma Rep. 1, Doc. No. 133, Ex. I.)  The Court fails to see how Transitions is entitled to summary judgment on the basis of Kucsma's Expert Report, which bears no relevance to whether Transitions did indeed knowingly submit false insurance claims to Horizon.  Should Transitions wish to challenge the method by which Horizon calculated its damages, it is free to do so at trial.

Transitions next argues that it is entitled to summary judgment because Horizon's review was based on the ICD-9 manual with no consideration given to the DSM-IV.  It offers the expert testimony of Dr. Klein, a certified professional coder, who opines, among other things, that Howell's reliance upon the ICD-9 manual "to determine the clinical efficacy of Transitions' use of certain ICD-9 codes was invalid . . . ."  (Def.'s SMF ¶ 75(a)).  Horizon argues that Howell did not make an independent determination—rather, "his review was limited to determining whether 'the primary diagnosis that was billed to Horizon matched the primary diagnosis recorded in [the] medical record.'"  (Pl.'s Opp. SMF ¶ 75, Doc. No. 144.)

The Court agrees with Horizon and denies Transitions' motion on this basis.  Howell did not attempt to make an independent diagnosis based on the medical records but was instead reviewing the records along with the ICD-9 codes reported to Horizon in order to verify whether the two matched.  (Id.)  He consulted the ICD-manual only to "get the description for the diagnoses code/ICD-9 code that [Horizon was] billed," not to make an independent diagnosis. To the contrary, Howell relied on the diagnosis rendered by Transitions, which it concedes are described using the ICD codes.  (See Answer to Amended Compl. ¶ 21, Doc. No. 52.)  Thus,

Transitions' Motion for Summary Judgment is denied to the extent it is predicated on Dr. Klein's expert report.

Finally, Transitions argues that Horizon's expert Dr. Frances, whose qualifications are not at issue, rendered a net opinion that "should have no bearing on the appropriateness of summary judgment." (Def.'s Mot. Summ. J. 23.) Admissibility of expert testimony is governed by Rule 702, which was amended in 2000 to reflect the Supreme Court decision in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 570 (1993).[3] The Rule provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. This rule requires a court to act as a "gatekeeper" to ensure that expert testimony is both relevant and reliable. Pineda v. Ford Motor Co., 520 F.3d 237, 243 (3d Cir. 2008). Rule 702 has a "'liberal policy of admissibility.'" Id. (quoting Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806 (3d Cir. 1997)).

To be admissible, expert testimony must satisfy three requirements under Rule 702: 1) the witness must be an expert (i.e. must be qualified); 2) the expert must testify about matters requiring scientific, technical, or specialized knowledge (i.e. must be reliable); and 3) the expert's testimony must assist the trier of fact (i.e. must fit.). Id. at 806 (citing In re Paoli R.R. Yard PCB Litig. (Paoli II), 35 F.3d 717, 742 (3d Cir. 1994)); Elock v. Kmart Corp., 233 F.3d 734, 741 (3d Cir. 2000).

---

[3] Transitions cites case law from the State of New Jersey in its brief to support its "net opinion" argument. However, the Federal Rules of Evidence govern the admissibility of expert opinion in federal court.

Here, Transitions concedes that "[t]he question is not whether or not Dr. Frances can be *qualified* to testify as an expert based upon his experience. . . ." (Def.'s Mot. Summ. J. 15 (emphasis in original).)  Rather, Transitions contests that Dr. Frances's report is based on his personal experiences and opinions.  (Id.)  The Court rejects Transitions argument.  Frances's reliability goes hand-in-hand with his extensive experience as an addiction specialist.  (See Frances Report 2, Doc. No. 133, Ex. M (detailing Dr. Frances's extensive professional experience).)  His opinions are based on his <u>professional</u> experience in his field and his review of the patients' records.  They are therefore not conclusory, and the Court declines to exclude Dr. Frances's testimony on the basis that his opinions are based on personal opinions.

**(iii)    Horizon's Fraud Claims**

Transitions also argues that it is entitled to summary judgment because Horizon has not met its burden and established genuine issues of material fact necessary to sustain its state law claims, namely negligent misrepresentation and fraud.  (Def.'s Mot. Summ. J. 24–29.)  It challenges Horizon's proofs with respect to the elements of knowledge, materiality, and falsity.  To demonstrate Horizon's failings, Transitions categorizes the insureds into six groups, providing reasons for summary judgment distinct to each group.

First, Transitions asserts that it is entitled to summary judgment with respect to insureds categorized in the so-called "Unrebutted Group" because Horizon has offered no competent testimony that the patients' were falsely diagnosed with alcohol dependency.  (Id. at 30.)  However, in so arguing, Transitions disregards the discrepancies between the diagnoses in the claims it submitted and the principal diagnoses in its patients' treatment records.  (See Orlando Opp. Cert., Ex. FFF (cataloguing the discrepancies between the diagnoses reported in the

insurance claims submitted and the diagnoses recorded on Axis I in treatment records).)[4]  These

discrepancies are sufficient to create an issue of material fact relevant to each cause of action.

Second, Transition moves for summary judgment on those patients it categorizes into the

"SHBP Group."[5]  According to Transitions, these patients were covered by health plans with

terms entitling patients to the same level of coverage regardless of whether the treatment was for

alcohol or another substance.  (Def.'s Mot. Summ. J. 32.)  This identical coverage, Transitions

argues, entitles it to summary judgment on Horizon's IFPA claim because Horizon cannot prove

the element of materiality.  (Id. 33.)  In making this argument, however, Transitions ignores New

Jersey law directly to the contrary.  On the issue of materiality, the Supreme Court of New Jersey

has stated as follows:

> The right rule of law, we believe, is one that provides insureds with an incentive to tell
> the truth.  It would dilute that incentive to allow an insured to gamble that a lie will turn
> out to be unimportant.  The focus, therefore, should be on the time when the insured is
> about to let loose on the lie.  An insured's misstatement is material if when made a
> reasonable insurer would have considered the represented fact relevant to its concerns
> and important in determining its course of action.  In effect, materiality should be judged
> according to a test of prospective reasonable relevancy.

Longobardi v. Chubb Ins. Co. of New Jersey, 582 A.2d 1257, 1263 (N.J. 1990).  Therefore, the

relevant inquiry is whether Transitions' alleged misrepresentations were material at the time they

were made. That Transitions' alleged misrepresentations concerned no discernable benefit

distinction does not render the misrepresentations immaterial.

Transitions also asserts that the SHBP Group's identical coverage entitles Transitions to

summary judgment on Horizon's fraud and negligent misrepresentation claims because Horizon

---

[4] Transitions' 30(b)(6) representative, Eloy Paez, stated in his deposition that every diagnosis code listed "on Axis
I" should be submitted to an insurance company.  (See Paez Dep. 199:1–12, Doc. No. 130, Ex. A.)  However, where
to locate an Axis I diagnosis in a treatment record is another issue of material fact in dispute.
[5] Transitions categorizes patients E.H., S.H., T.M., B.O., R.P., M.P., J.R., and M.S. into the SHBP group.  (See
Werner Cert., Ex. PPP, Doc. No. 133.)

cannot prove it suffered damages.  Because Transitions never actually submitted claims to Horizon with the alternative diagnosis, the Court cannot find as a matter of law that the Horizon would have reimbursed Transitions for the care the patients' received.  Indeed, Horizon disputes that it was required to do so.  Therefore, the Court finds that Transitions is not entitled to summary judgment on the patients in the SHBP group.  There is still a disputed issue of material fact as to whether many of these patients would have received coverage for the treatment they received at Transitions if it had submitted insurance claims listing an alternative diagnosis.

Third, Transitions argues that it is entitled to summary judgment on the so-called "Undocumented" group, namely patients J.A., V.F., A.W., R.S., T.G., J.O., and V.F. because Horizon has not provided the relevant plan documents demonstrating the disparity in levels of coverage.  The Court finds Transitions position is incorrect.  In Horizon's responsive statement of facts, it cites to portions of the record that contain the plan information for patients J.A., A.W., R.S., T.G., J.O., and V.F.  (Pl.'s Resp. SMF ¶¶ 410, 353, 322, 39, 389, 398–399.)  Transitions' Motion for Summary Judgment on the "Undocumented" group is therefore denied.

The Court likewise denies Transitions summary judgment motion with respect to patients in the so-called "Biologically-Based Group,"[6] whom Transitions argues receive identical benefits regardless of whether they are diagnosed with alcohol dependence or a biologically-based mental illness.  (Def.'s Br. 37.)  The Court finds that there is still a material issue of fact with respect to the patients in this group, namely whether Horizon would indeed have paid these claims if Transitions had used a diagnosis code for a biologically-based mental illness.  Simply because coverage limits are identical does not mean as a matter of law that Transitions would have been

---

[6] The Biologically-Based Group includes patients E.H., P.H., C.H., L.J., S.K., S.N., B.C., A.C., C.E., A.E., B.G., and T.G.  (See Werner Cert. Ex. PPP, Doc. No. 133.)

entitled to payment.  Indeed, the Record demonstrates that it is Horizon who makes this determination.  Summary judgment for Transitions is therefore inappropriate.

Finally, Transitions argues it is entitled to summary judgment for patients A.B., M.P., and R.P. because Horizon admittedly suffered no damages.  (Def.'s Br. 39.)  The Court agrees that Transitions is entitled to summary judgment but only on Horizon's common law fraud and negligent misrepresentation claims.  For each of these causes of action, Horizon must demonstrate that it suffered damages as a result of Transitions' misrepresentations.  Here, Horizon concedes in its Amended Complaint that it suffered no overpayment for patients A.B., M.P., and R.P, (Amended Compl. ¶ 36, Doc. No. 44), but nonetheless argues in its opposition brief that it is entitled to investigative costs and attorney's fees under the IFPA.  (Pl.'s Opp. Br. 30.)  While this is true for Horizon's IFPA claim, the IFPA does nothing to alter the damages requirement for common law fraud or negligent misrepresentation.  See Liberty Mut. Ins. Co. v. Land, 892 A.2d 1240, 1247 (N.J. 2006) ("[T]he Legislature in enacting the IFPA did not codify common law fraud but rather supplemented that action because, standing alone, it had proven to be insufficient in combating and deterring insurance fraud.  In furtherance of that purpose, the Act requires plaintiffs alleging IFPA violations to prove fewer elements than required for common law fraud. . . . [T]he statutory language of the IFPA does not require proof of reliance on a false statement or resultant damages.").  As such, the Court denies Transitions Motion for Summary Judgment on Horizon's IFPA claim for patients A.B., M.P., and R.P. and grants the motion for these patients as it relates to Horizon's claims for common law fraud and negligent misrepresentation.

Finally, Transition argues that it is entitled to summary judgment on Horizon's claims to the extent they rely on Dr. Frances' net opinion.  Having previously addressed, Transitions net

opinion argument, the Court denies Transitions Motion for Summary Judgment based on this argument.

### B. Horizon's Motion for Partial Summary Judgment

Horizons seeks partial summary judgment on its IFPA claims for twenty-seven patients[7] because there is allegedly no issue of material fact that Transitions submitted health insurance claims misrepresenting that its patients were treated for alcohol dependency.[8]  (Pl.'s Br. 4, Doc. No. 137.)  Horizons claims that because of Transitions' misrepresentations, it overpaid Transitions $1,694,286.00, entitling it to $5,028,858.00 under the IFPA's treble damages provision.  (Id.)

### (i)    Transitions Rule 30(b)(6) testimony

Horizon partly relies on the testimony of Transitions' Fed. R. Civ. P. 30(b)(6) representative Eloy Paez,[9] whose deposition testimony Horizon claims entitles it to summary judgment on claims submitted for patients S.N., H.H., K.A., and S.S.  (Pl.'s Mot. Summ. J. 17, Doc. No. 137.)  With respect to these patients, Transitions submitted claims listing only the ICD code for alcohol dependency, (see Pl.'s SMF ¶¶ 79, 86, 93, 100), even though their treatment records allegedly reveal Axis I diagnoses of conditions other than alcohol dependency, (id. ¶¶ 77, 84, 90, 98).  During his deposition testimony, Paez reviewed the treatment records for S.N., H.H., K.A., and S.S.  He testified that it would be "incorrect" to submit a claim listing only the

---

[7] Horizon claims it seeks summary judgment on 28 patients' claims.  The Court counts only 27 patients as the subject of Horizon's Motions, namely patients S.N., H.H., K.A., S.S., C.H., V.F., T.G., M.P., S.K., C.E., R.S., B.C., M.S., J.C., L.J., P.H., E.R., A.E., E.H., B.G., A.Ca., J.A., R.P., K.B., B.O., C.F., and T.M.

[8] Horizon's brief makes no mention of partial summary judgment on its common law fraud and negligent misrepresentation claims.  Therefore, the Court did not considered whether Horizon is entitled to summary judgment on those claims.

[9] Rule 30(b)(6) states, in relevant part,

> [A] party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination.  The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf . . . ."

diagnosis code for alcohol dependency for patients S.N. and H.H.  (Paez Dep. 273:20–24; 242:3–

6).  He also testified that a diagnosis of alcohol dependency was "inconsistent" with K.A.'s Axis

I diagnosis in his medical records, (id. 296:7–20), and was a "misrepresentation" of the diagnosis

of S.S., whose treatment records do not support a diagnosis of alcohol dependency, (id. 256:24–

275:5; 257:20–258:25).

      Horizon argues that Paez's testimony is binding on Transitions and thus requires

judgment in Horizon's favor.  (Pl.'s Mot. Summ. J. 29–30.)  The term "binding" has caused

some confusion in this circuit, but the Court agrees with the law as explained in State Farm Mut.

Auto. Ins. Co. v. New Horizont, Inc., 250 F.R.D. 203, 212 (E.D. Pa. 2008):

> [T]he use of the word "binding" in the opinions has caused some confusion
> prompting litigants to argue, as Defendants do here, that Rule 30(b)(6) testimony
> is something akin to a judicial admission—a statement that conclusively
> establishes a fact and estops an opponent from controverting the statement with
> any other evidence.
>
> This is not quite the case.  Although the Third Circuit has yet to address the issue,
> the better rule is that "the testimony of a Rule 30(b)(6) representative, although
> admissible against the party that designates the representative, is not a judicial
> admission absolutely binding on that party."  8A Charles Alan Wright, Arthur R.
> Miller & Richard L. Marcus, Federal Practice and Procedure § 2103 (Supp.
> 2007); A.I. Credit Corp. v. Legion Ins. Co., 265 F.3d 630, 637 (7th Cir. 2001)
> ("Testimony given at a Rule 30(b)(6) deposition is evidence which, like any other
> deposition testimony, can be contradicted and used for impeachment purposes."
> (quotation omitted)).

Here, Paez's deposition testimony does not entitle Horizon to summary judgment.  As the Court

indicated in State Farm, Horizon may use Paez's testimony to impeach Transitions' credibility

should they seek to introduce evidence to the contrary, but his testimony is not binding in the

sense that it conclusively establishes Transitions' misrepresentations.  The Court therefore denies

Horizon's motion for summary judgment to the extent it is predicated on Paez's testimony.

18

Transitions seeks to exclude the portions of Paez's testimony on which Horizon relies.  It argues that the instances where Horizon asked Paez whether Transitions "misrepresented" diagnoses concerns an ultimate issue and is therefore inadmissible.  (Def.'s Opp. Br. 9.)  The Court disagrees and declines to exclude Paez's testimony.

Federal Rule of Evidence 704(a) states that "an opinion is not objectionable just because it embraces an ultimate issue."  Here, although "misrepresentation" is indeed a term used in the legal standards underlying Horizon's claims, Paez's deposition testimony is such that a lay person would understand.  Paez did not simply state that Transitions misrepresented its patients diagnoses.  Rather, Paez responded affirmatively to questions such as, "Would it be incorrect to submit a claim to Horizon that only listed the diagnoses code for alcohol dependency?", (Paez Dep. 273:21–24), and "no" to questions such as, "Did you find anything in your review of [this patient's] file which would support submitting a claim to Horizon for payment that listed only alcohol dependency as a diagnosis on the claim form.  (Id. 273:16–20.)  These types of questions are similar to those exemplified in the Advisory Committee's Commentary to Rule 704, which the Court finds instructive.[10]  The Court finds this testimony to be factual and therefore admissible.

**(ii)    Transitions' Expert Testimony**

Horizon argues that it is entitled to summary judgment for claims submitted for patients C.H., V.F., T.G., M.P., S.K., C.E., S.S., R.S., and B.C.  It is undisputed that Transitions submitted insurance claims for these patients claiming diagnoses of alcohol dependency when

---

[10] In its commentary to Fed. R. Evid. 704, the Advisory Committee clarified that Rule 704 abolishes the so-called "ultimate issue" rule in favor of an approach that admits lay and expert opinions "when helpful to the trier of fact."  With the help of Rules 701, 702, and 403, the Rules do, however, "stand ready to exclude opinions phrased in terms of inadequately explored legal criteria."  Thus, the question "Did T have capacity to make a will?" would be excluded, while "Did T have sufficient mental capacity to know the nature and extent of his properly and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed.

they were not diagnosed with and did not suffer from alcohol dependency. (See Pl.'s SMF ¶¶ 109, 122, 131, 138, 147, 155, 158, 162, 166, 172.) Therefore, the Court grants Horizon's motion for summary judgment on the element of falsity for patients C.H., V.F., T.G., M.P., S.K., C.E., S.S., R.S., and B.C.

As for materiality, the Court explained supra that the test for materiality is whether the insurer would have considered the representative fact at the time it was made "relevant to its concerns and important in determining its course of action. In effect, materiality should be judged according to a test of prospective reasonable relevancy." Longobardi v. Chubb Ins. Co of N.J., 582 A.2d 1257, 1263 (N.J. 1990). Transitions opposes summary judgment, arguing that Transitions' misrepresentations were immaterial because Horizon either did not ultimately overpay patient's insurance benefits or the coverage for the patient's diagnosis was the same as it would have been if the patient was diagnosed with alcohol dependence. (Def.'s Opp. Br. 13–14.)

As explained supra, Transitions' argument was rejected by the New Jersey Supreme Court in Longobardi. There, the Supreme Court rejected the Appellate Division's definition of materiality, which held material to mean "important or significant to the origin or nature of the loss and that the misrepresentation must have resulted in prejudice to the insurance company." 582 A.2d at 1262. The Supreme Court found that it was more appropriate to focus on "when the insured is about to let loose the lie" in order to provide insureds with an incentive to tell the truth. Id. at 1263. To find that Transitions' misrepresentation is immaterial because Horizon ultimately did not overpay on its patients' benefits would confuse that incentive by allowing "an insured to gamble that a lie will turn out to be unimportant." Id. It would also make little sense to require that a misrepresentation result in damages in order to be material when resultant damages are not necessary to state a claim under the IFPA. See Liberty Mut. Ins. Co., 892 A.2d at 1246. Here, a

patient's diagnosis is essential to determining whether the insured is entitled to benefits. Therefore, the Court grants Horizon's motion for partial summary judgment with respect to the element of materiality for patients C.H., V.F., T.G., M.P., S.K., C.E., S.S., R.S., and B.C.

Horizon's brief did not mention whether the undisputed facts demonstrate that Transitions conduct satisfied the "knowing" element of the IFPA, and therefore the Court has not considered the issue.[11]   In sum, Horizon's motion for summary judgment on its IFPA claim is granted with respect to the elements of falsity and materiality for patients C.H., V.F., T.G., M.P., S.K., C.E., S.S., R.S., and B.C.

     **(iii)**     **Transitions' Treatment Records**

Finally, Horizon moves for summary judgment on claims submitted for patients J.C., L.J., P.H., E.R., A.E., E.H., B.G., A.Ca., J.A., R.P., K.B., B.O., C.F., T.M., and S.H. on grounds that the treatment records submitted demonstrate that these patients were not diagnosed with alcohol dependency.  (See Pl.'s Br. 22–23.)  Transitions' experts, however, have opined that alcohol dependency was a proper diagnosis for these patients.[12]   Determining whether these patients suffered from alcohol dependency—a fact necessary to the falsity element of Horizon's IFPA claim—requires the Court to weigh the treatment records and Horizon's expert testimony against Transitions' expert testimony.  This fact-intensive inquiry is inappropriate at the summary judgment stage.  The Court will therefore deny Horizon's motion for summary judgment for patients J.C., L.J., P.H., E.R., A.E., E.H., B.G., A.Ca., J.A., R.P., K.B., B.O., C.F., T.M., and S.H.

---

[11] Regardless, whether a Defendant made false misrepresentations knowingly is often an inherently fact-dependent determination.

[12] For eight of these patients, Horizon's expert came to the conclusion that alcohol dependence was not a proper diagnosis.

### (iv)   Transitions' Counterclaim

Transitions' counterclaim, brought under ERISA, arises out of Horizon's repayment demand for the funds it deemed to be overpayments.  As explained above, Horizon conducted an audit in 2008 of Transitions' treatment records after noticing a trend in Transitions' utilization of certain ICD codes.  (Def.'s SMF ¶ 23–15.)  On or around February 9, 2015, Horizon sent a demand letter to Transitions formally requesting repayment of funds that Horizon believed it had overpaid.  (Howell Dep. 53:6–13, Werner Cert. Ex. C, Doc. No. 133.)  Transition asserts that this overpayment demand constitutes an "adverse benefit determination," as that term is defined under ERISA regulations, thereby triggering ERISA's notice and appeal rights.  (Def.'s Mot. Summ. J. on Countercl. 2, Doc. No. 136.)  According to Transitions, Horizon also withheld payment on unrelated claims in an attempt to coerce Transitions into repaying the allegedly overpaid sums.

Transitions seeks summary judgment on its ERISA claims.  First, it seeks summary judgment on its claim for unpaid benefits that Horizon allegedly withheld.  It brings this claim under 29 U.S.C. § 1132(a)(1)(B), which permits a plan participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  Second, Transitions seeks injunctive and equitable relief under § 1132(a)(3) of ERISA for Horizon's failure to provide Transitions with a full and fair review of Horizon's determinations, as required by § 1133.  Section 1132(a)(3) authorizes a plan participant, beneficiary, or fiduciary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief, (i) to redress such

violations or (ii) to enforce any provisions of this subchapter of the terms of the plan."  Lastly, Transitions seeks to enjoin Horizon from continuing its recoupment effort and a return of all funds Horizon has recouped.

The Court finds that summary judgment in favor of Transitions is inappropriate on its Section 502(a)(1)(B) claim for "unpaid benefits, interest back to the date its claims were originally submitted to Horizon . . . , withdrawal of Horizon's overpayment demand, and repayment of all amounts withheld by Horizon."  (Counterclaim 29, Doc. No. 67.)  According to Transitions, these unpaid benefits were the result of Horizon's efforts to "recoup" funds Horizon believed it had overpaid.  However, as Horizon points out in its opposition brief, Transitions has not offered any evidence in support of this claim.  Transitions has not identified any benefits that are unpaid or any amount of money Horizon successfully recouped.  The Court therefore denies Transitions' motion for summary judgment and grants summary judgment on Transitions' claim for unpaid benefits under 29 U.S.C. § 1132(a)(1)(B) in favor of Horizon.

The Court also denies Transitions' motion as it pertains to its remaining claims for injunctive relief.  In its reply brief, Transitions clarifies the remedy it is seeking, namely that the Court "resolve the coverage dispute and directly enjoin Horizon from recovering benefits where covered by the underlying plans."  (See Def.'s Reply Br. 14, Doc. No. 159.)  In deciding whether to grant a permanent injunction, district courts consider "whether:  (1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant, and (4) the injunction would be in the public interest."  Shields v. Zuccarini, 254 F.3d 476, 482 (3d Cir. 2001).

Here, Transitions has failed to show how it will be irreparably injured without injunctive relief. Horizon cannot recoup the alleged overpayments without a judgment from this Court in Horizon's favor. To the extent Transitions alleges that Horizon is withholding payment on unrelated claims until it has successfully recouped the overpayments, Transitions has not shown the Court any evidence that Horizon is engaging in this practice. And even then, money damages would be an adequate remedy at law, thereby precluding the need for injunctive relief.

Moreover, the relief Transitions seeks—namely the resolution of the coverage dispute—is at the heart of Horizon's suit. As explained supra, there are several disputed issues of material fact preventing the Court from resolving this case at the summary judgment juncture. Should Transitions succeed on Horizon's fraud claims, Horizon would have no legal basis to recover any of the funds it seeks. Transitions would therefore receive the precise relief it is requesting.

Transitions Motion for Summary Judgment on its Counterclaim is therefore denied, and judgment is granted in Horizon's favor.

## IV.    CONCLUSION

For the foregoing reasons, Horizon's Motion for Partial Summary Judgment (Doc. No. 130) is granted-in-part and denied-in-part, Transitions' Motion for Summary Judgment (Doc. No. 133) on Horizon's Complaint is granted-in-part and denied-in-part (Doc. No. 136), Transitions' Motion for Summary Judgment on the Counterclaim is denied, and Horizon's Motion for Summary Judgment on the Counterclaim (Doc. No. 129) is granted. An appropriate order will issue today.

Dated: 12/7/2015                                        s/Robert B. Kugler
                                                        ROBERT B. KUGLER
                                                        United States District Judge

24